FILED

July 8 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 06-0061

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 240

ALLSTATE INSURANCE COMPANY,

  Plaintiff and Appellee,

 v.

TERRY WAGNER-ELLSWORTH and TIFFANY
RUSK, individually, and as mother and
natural guardian of BRANDON RUSK,

  Defendants and Appellants.

APPEAL FROM: District Court of the Eighth Judicial District,
       In and For the County of Cascade, Cause No. DDV 04-1008(C)
       Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

      Ward E.Taleff; Taleff Law Office, Great Falls, Montana
      (Attorney for Appellant Wagner-Ellsworth)

      Roland B. Durocher; Hartelius, Ferguson, Kazda, Baker, & Durocher,
      P.C., Great Falls, Montana (Attorney for Appellant Rusk)

    For Appellee:

      Mikel L. Moore; Christensen, Moore, Cockrell, Cummings & Axelberg,
      P.C., Kalispell, Montana

            Submitted on Briefs: November 9, 2006

               Decided: July 8, 2008

Filed:

               Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Terry Wagner-Ellsworth (Wagner-Ellsworth) and Tiffany Rusk (Tiffany), individually, and as mother and natural guardian of Brandon Rusk (Brandon) appeal an order entered in the Eighth Judicial District Court, Cascade County, granting summary judgment in favor of Allstate Insurance Company (Allstate). We reverse.

¶2 We consider the following issue on appeal:

¶3 Did the District Court err when it denied Wagner-Ellsworth and Tiffany's motions for summary judgment and granted summary judgment in favor of Allstate?

**BACKGROUND**

¶4 On February 22, 2000, Wagner-Ellsworth caused an automobile-pedestrian collision, striking Matthew Rusk (Matthew) as he and his brother, Brandon, crossed the street together in front of their elementary school. Matthew's mother, Tiffany, while not immediately present at the time of the accident, was arriving to pick up her sons from school and came upon Matthew while he was still lying injured on the street. Matthew suffered severe trauma and was hospitalized for an extended period of time. All of Matthew's claims stemming from the accident have been fully and finally settled and released in exchange for Allstate's payment of the per-person limit of $50,000 under Wagner-Ellsworth's policy.

¶5 Tiffany filed a negligence action against Wagner-Ellsworth on her own behalf and as guardian of Brandon, claiming emotional and physical injuries to herself and to Brandon. Tiffany and Brandon contend they were traumatized and suffered injury, not

2

by being struck by the car, but rather as a result of Matthew being run over and injured. Brandon's injuries were allegedly the result of seeing his brother run over; Tiffany's injuries allegedly resulted from her arrival at the accident scene, the subsequent ambulance ride to the hospital, and her continued care of Matthew as he recovered. The complaint alleged that they both suffered physical and emotional injuries. Brandon allegedly became withdrawn and Tiffany allegedly suffered from stress, migraine headaches, a rapid heart beat when she hears sirens, physical pain, and depression. Both Brandon and Tiffany underwent therapy.

¶6      In response to the suit, Wagner-Ellsworth sought coverage from her liability insurer, Allstate.[1] Allstate then filed this action, seeking a declaratory judgment that it was not obligated to provide a defense or coverage to Wagner-Ellsworth for Tiffany and Brandon's claims of emotional and psychological injuries and any resulting physical manifestations. The District Court granted Allstate's motion for summary judgment, and this appeal followed.

## STANDARD OF REVIEW

¶7      "We review a district court's conclusions of law to determine whether the court's conclusions of law are correct." *Hern v. Safeco Ins. Co. of Illinois*, 2005 MT 301, ¶ 18, 329 Mont. 347, ¶ 18, 125 P.3d 597, ¶ 18 (citations omitted). Our standard of review for an appeal from a district court's order granting summary judgment is de novo. *Hern*, ¶ 18.

---

[1]Wagner-Ellsworth was an insured under her mother's Allstate policy.

¶8    Here, the issue before this Court is whether, under the terms of Wagner-

Ellsworth's insurance policy, Allstate was entitled to judgment as a matter of law. "The

interpretation of an insurance policy presents a question of law." *Jacobsen v. Farmers*

*Union Mut. Ins. Co.*, 2004 MT 72, ¶ 9, 320 Mont. 375, ¶ 9, 87 P.3d 995, ¶ 9 (citing

*Wendell v. State Farm Mutual Ins. Co.*, 1999 MT 17, ¶ 10, 293 Mont. 140, ¶ 10, 974 P.2d

623, ¶ 10).  Consequently, we review whether the District Court correctly interpreted the

provisions of Wagner-Ellsworth's insurance policy. *Jacobsen*, ¶ 9.

## DISCUSSION

¶9    ***Did the District Court err when it denied Wagner-Ellsworth and Tiffany's***

***motions for summary judgment and granted summary judgment in favor of Allstate?***

¶10   At the time of the accident, Wagner-Ellsworth was covered by Allstate automobile

Policy No. 020343927.  The policy's General Statement of Coverage declared:

> If a premium is shown on the Policy Declarations for Bodily Injury
> Liability Coverage and Property Damage Liability Coverage, Allstate will
> pay damages which an insured person is legally obligated to pay because
> of:
>
> a.  bodily injury sustained by any person . . . .

The policy defined "bodily injury" as follows:

> "Bodily Injury" means physical harm to the body, sickness, disease, or
> death, but does not include:
>
> a.  Any venereal disease;
> b.  Herpes;
> c.  Acquired Immune Deficiency Syndrome (AIDS);
> d.  AIDS Related Complex (ARC);
> e.  Human Immunodeficiency Virus (HIV);

4

or any resulting symptom, effect, condition, disease or illness related to a. through e. listed above.

¶11    The District Court held that the policy language contained in Wagner-Ellsworth's liability policy did not cover Tiffany and Brandon's claimed injuries, relying on *Jacobsen v. Farmers Union Mut. Ins. Co.* In *Jacobsen*, the plaintiff attempted to collect under his own uninsured coverage for alleged emotional injuries he had suffered. Jacobsen was driving his vehicle when he encountered another vehicle traveling in the opposite direction. That vehicle suddenly crossed the center median and eventually came to rest in a wheat field on the other side of the roadway. Jacobsen stopped to help and found the driver lying unconscious in his vehicle, with blood flowing from a wound in his head. Jacobsen administered aid for several minutes, but was later supplanted by a team of paramedics. As the paramedics removed the driver from his vehicle, Jacobsen noticed a handgun underneath the driver's body. The cause of death was later determined to be a suicide. *Jacobsen*, ¶¶ 4-5. Jacobsen claimed that his emotional injuries as well as his resulting physical manifestations were covered under his uninsured coverage for "bodily injury."

¶12    After concluding there was no ambiguity in the meaning of "bodily injury," and with no prior Montana case addressing whether emotional or psychological injuries constituted "bodily injury," this Court looked to the United States District Court's holding in *Aetna Cas. and Sur. Co. v. First Sec. Bank of Bozeman*, 662 F. Supp. 1126 (D. Mont. 1987), and concluded that the emotional injury suffered by Jacobsen, including the

5

physical manifestations resulting therefrom, did not constitute "bodily injury" as defined in that policy.[2] *Jacobsen*, ¶¶ 23, 29.

¶13 Here, the District Court reasoned:

> The language in the Farmers' Union policy and the Allstate policy in question are too similar to allow this Court to overlook the Montana Supreme Court's decision in *Jacobsen*. The language defining "bodily injury" is unambiguous and does not include the injuries Brandon and Tiffany have claimed or any physical manifestations that may result from the psychological damages. The Court will not extend itself to create an ambiguity where there is none. While Montana law concerning insurance contracts has developed with the intention of providing fundamental protection to consumers, this does not allow this Court to simply ignore the clear terms of a contract.

We commend the District Court for its close adherence to precedent. However, after a careful review of the policy language at issue here, and of the analysis employed in *Jacobsen*, we ultimately conclude herein that our decision in *Jacobsen* was incorrectly

---

[2] The relevant language in Jacobsen's policy for uninsured motorist coverage was quoted in the Opinion:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

Consistent with the statutory language in § 33-23-201, MCA, the policy defines "bodily injury" as follows:

> "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

*Jacobsen*, ¶ 11.

6

analyzed and should be overruled, requiring reversal of the District Court. For purposes of promoting clarity, we discuss the issues raised in the following three parts.

## I. Coverage of Third-Party Claims

¶14 Tiffany argues the District Court erred by not applying the plain language of the contract because it provides coverage for "damages" more generally, and not strictly for bodily injury. She notes that the policy requires Allstate to pay for "damages which an insured person is legally responsible to pay because of bodily injury sustained by any person . . . ." Tiffany contends this language is broader than the policy language at issue in *Jacobsen*. Therefore, since Tiffany and Brandon's damages were incurred "because of" Matthew's bodily injury, she argues that their damages were covered whether or not they suffered the bodily injury themselves. Wagner-Ellsworth agrees, and likewise contends that the District Court failed to consider these material differences between the policy language in *Jacobsen* and her policy with Allstate.

¶15 In response, Allstate argues this Court's holding in *Jacobsen* controls the outcome of this action because, as in *Jacobsen*, the unambiguous definition of "bodily injury" in Wagner-Ellsworth's Allstate policy does not include emotional or psychological injuries or resulting physical manifestations. Citing *Graber v. State Farm Fire and Cas. Co.*, 244 Mont. 265, 270, 797 P.2d 214, 217 (1990), which held an insurer was not obligated to indemnify an insured where the claims do not come within the coverage of the policy, Allstate reasons that Appellants' proffered interpretation defies common sense and ignores the "unbroken connection" in the policy language requiring the "bodily injury" to

7

be sustained by the "any person" for whose damages the insured person may be legally obligated. Appellants' interpretation, Allstate argues, severs the link between the person who suffers the bodily injury and the person claiming damages and re-writes the policy to mean that "Allstate will pay damages which an insured person is legally obligated to pay because of: bodily injury sustained by any person, *whether the damages are suffered by the person who sustained the bodily injury or by any other person . . . .*" (emphasis in Allstate's brief). Consequently, Allstate urges that Appellants' argument be rejected.

¶16 "This Court is bound to interpret the terms of this insurance policy according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Stutzman v. Safeco Ins. Co. of America*, 284 Mont. 372, 376, 945 P.2d 32, 34 (1997). We "may not rewrite the contract at issue, but must enforce it as written if its language is clear and explicit." *Stutzman*, 284 Mont. at 376, 945 P.2d at 34 (citation omitted).

¶17 We disagree with Allstate's position. The language in the opening General Statement of Coverage in Wagner-Ellsworth's policy is indeed broader than the policy language at issue in *Jacobsen*. The policy here states: "Allstate will pay damages which an insured person is legally obligated to pay because of . . . a. bodily injury sustained by any person." In contrast, the uninsured coverage provision in *Jacobsen* stated that "damages must result from 'bodily injury' sustained by the 'insured.'" *Jacobsen*, ¶ 12. While the policy in *Jacobsen* required that the insured be the person who suffered the bodily injury, Wagner-Ellsworth's policy requires payment for damages that an insured

8

person is legally obligated to pay because of bodily injury sustained by *any person* in a covered accident, whether to the claimant directly or to another.

¶18 The language here provides coverage to Wagner-Ellsworth for Matthew's damages, as he sustained a bodily injury. However, Tiffany and Brandon also allege that they sustained damages "because of" Matthew's bodily injury, and thus their claims necessarily fall within the language which provides that "Allstate will pay damages which an insured person is legally obligated to pay because of . . . a. bodily injury sustained by any person."

¶19 This interpretation is supported by the policy's Limitation of Liability section, which provides that "[t]he limit stated for each person for bodily injury is our total limit of liability for all damages because of bodily injury sustained by one person, *including all damages sustained by anyone else* as a result of that bodily injury." (Emphasis added.) This language contemplates third party claims such as those made here by Tiffany and Brandon and reinforces Allstate's obligation to insure Wagner-Ellsworth against those claims for damages—within the applicable monetary limits of the policy.

¶20 In summary, the broad language used in the policy's General Statement of Coverage and the Limits of Liability section provide Wagner-Ellsworth with coverage for the claims made by Tiffany and Brandon resulting from Matthew's bodily injuries.

## II. Monetary Limits for Derivative Claims

¶21 Allstate notes that because Tiffany and Brandon's initial argument premises their claims upon Matthew's bodily injury, and not on their own bodily injuries, their claims

9

necessarily derive from Matthew's bodily injury. As such, Allstate argues that, even under the interpretation of the policy rendered above in Section I, no funds are available for Tiffany and Brandon's derivative claims, because the policy limits for coverage have already been exhausted for Matthew's claim, citing to *Bain v. Gleason*, 223 Mont. 442, 451-52, 726 P.2d 1153, 1158-59 (1986). In *Bain*, this Court considered whether a consortium claim was subject to the "each person" limit of liability in an insurance policy, and, in doing so, examined both the policy and the mandatory motor vehicle liability insurance law, § 61-6-103, MCA (1981). In determining that the consortium claim came within the each person limitation, we concluded:

> Our interpretation of the Farmers' policy in the case at bar must follow our interpretation of the statutes as they apply to mandatory motor vehicle liability insurance. It is plain under our statutes, and under the policy provisions here that the "each person" limitation refers to all damages imposed by law by whomever suffered resulting from one bodily injury and one accident; the "each accident" limitation applies when two or more persons suffer bodily injury in the same accident.

*Bain*, 223 Mont. at 451, 726 P.2d at 1158.

¶22 The statute governing the liability policy at issue here, § 61-6-103(2)(b), MCA (2003), requires that the policy

> insure the . . . insured . . . against loss from the liability imposed by law for damages . . . subject to limits . . . as follows: . . . (i) $25,000 because of bodily injury to or death of one person in any one accident and subject to said limit for one person; (ii) $50,000 because of bodily injury to or death of two or more persons in any one accident[.][3]

---

[3]The monetary limits in coverage under the subject Allstate policy are $50,000 per person and $100,000 per occurrence for bodily injury, and $25,000 for property damage, which exceed the statute's minimum monetary limits.

10

Thus, the statute requires that the owner or operator be insured for losses from liability imposed by law subject to the limits stated for a single bodily injury or for bodily injuries to two or more persons. The coverage language of the statute is similar to the language in the Allstate policy, which provides coverage for "damages which an insured person is legally obligated to pay because of . . . bodily injury sustained by any person," and which we have interpreted in Section I to include Tiffany and Brandon's claims stemming from Matthew's bodily injury. However, the statute also requires that the coverage provided for claims arising "because of" the bodily injury of another be "subject to said limit for *one person.*" (Emphasis added.) Thus, the statutory monetary coverage limit specified for a bodily injury to one person applies to others who have suffered losses arising from the bodily injury to that one person.

¶23    An examination of the Allstate policy at issue reveals that it tracks the statutory coverage language. Wagner-Ellsworth's policy states, with regard to "Limits of Liability," that:

> The limits shown on the Policy Declarations are the maximum we will pay for any single accident involving an insured auto. *The limit stated for each person for bodily injury is our total limit of liability for all damages because of bodily injury sustained by one person, including all damages sustained by anyone else as a result of that bodily injury.*
>
> Subject to the limit for each person, the limit stated for each accident is our total limit of liability for all damages for bodily injury. . . .

(Emphasis added.) Like the statute, the Allstate policy applies the "each person" monetary limit to not only the damages suffered by the person who suffered the bodily injury, but also to the damages suffered by anyone else as a result of that bodily injury.

11

The "each accident" or, as stated in the policy, "each occurrence" monetary limitation applies only when two or more persons suffer bodily injury in one accident.

¶24 Therefore, Allstate is correct that, even though Tiffany and Brandon's claims for damages because of Matthew's bodily injury are covered under Wagner-Ellsworth's policy, those damages are subject to the "each person" monetary limit applicable to Matthew, which amount was exhausted in Matthew's settlement. Therefore, despite coverage, there are no additional funds available under this policy for Tiffany and Brandon's derivative claims. Only if Tiffany and Brandon can establish that their claims likewise fall within the policy's definition of "bodily injury," thus establishing that there are two or more bodily injury claims in this accident, will the higher "each accident" monetary limits of the policy be triggered.

### III. Emotional Distress with Physical Manifestations as "Bodily Injury"

¶25 We then turn to Appellants' argument that Tiffany and Brandon's emotional injuries, with resulting physical manifestations, fall within the Allstate policy's definition of "bodily injury." The policy defines "bodily injury" as "physical harm to the body, sickness, disease, or death . . . [listing exceptions]." As noted, the District Court relied on *Jacobsen* in granting summary judgment in favor of Allstate, reasoning that

> [t]he language in the Farmers' Union policy and the Allstate policy in question are too similar to allow this Court to overlook the Montana Supreme Court's decision in *Jacobsen*. The language defining "bodily injury" is unambiguous and does not include the injuries Brandon and Tiffany have claimed or any physical manifestations that may result from the psychological damages.

12

¶26     Tiffany argues that she and Brandon suffered "shock and fright" when Matthew was run over, leading to physical symptoms that should constitute a "bodily injury." Wagner-Ellsworth agrees, and contends the Allstate policy is distinguishable from the policy in *Jacobsen*, providing broader coverage.  Wagner-Ellsworth argues that because "bodily injury" is defined in the Allstate policy as "physical harm to the body, sickness, disease, <u>or</u> death," this definition creates a disjunctive list based on the use of commas which creates coverage for Tiffany and Brandon's asserted emotional injuries as a "sickness" or "disease."  Alternatively, she argues that if the definition did not create a disjunctive list, then the definition is ambiguous and, either way, Tiffany and Brandon's emotional injuries should be covered without an underlying physical injury.

¶27     Allstate responds that the mere use of the word "or" in the definition of bodily injury does not make the definition disjunctive or otherwise turn the individual components of the definition into separate bases for coverage.  Moreover, Allstate argues that, consistent with *Jacobsen*, the definition of "bodily injury" in the policy is unambiguous and does not include emotional or psychological injuries or resulting physical manifestations.  In reply, Appellants respectfully suggest that the Court "revisit" *Jacobsen*, noting that *stare decisis* does not require the Court to follow "a manifestly wrong decision."

¶28     We agree with Allstate and the District Court that the definition of "bodily injury" in this case is substantially similar to the definition at issue in *Jacobsen* ("bodily injury, sickness or disease sustained by a person including death resulting from any of these").

13

We are not persuaded by Wagner-Ellsworth's argument that the policy's use of commas and the word "or" within the definition requires a different outcome than we reached in *Jacobsen*. *Jacobsen* thus requires a decision for Allstate if it was correctly decided. However, we accept Appellants' invitation to revisit and reconsider our holding in *Jacobsen*.

¶29 In reaching our decision in *Jacobsen*, this Court relied heavily on the United States District Court's 1987 *Aetna* decision. In *Aetna*, the insurer brought a declaratory action seeking judgment that the liability insurance policy it had issued to a bank did not provide coverage for certain damages claimed by an employee who had been discharged, including damages for emotional distress. *Aetna*, 662 F. Supp. at 1127. The parties argued over whether a claim for emotional distress came within the term "bodily injury." *Aetna*, 662 F. Supp. at 1128. After noting that Montana law contained no authority on point, the United States District Court stated: "[w]here it appears that the highest court of Montana has not squarely addressed a particular question, this court must forecast what the Montana Supreme Court would do were it confronted with the same question." *Aetna*, 662 F. Supp. at 1127 (citations omitted).

¶30 The *Aetna* court first stated that courts which had interpreted the term "bodily injury" as used in comprehensive general liability insurance policies "have determined that it limits coverage to physical injury to the body" and cited to several cases. *Aetna*, 662 F. Supp. at 1128. The court then observed that "[i]n tort actions alleging mental suffering, the Montana Supreme Court has distinguished mental and emotional harm

14

from physical harm." *Aetna*, 662 F. Supp. at 1128 (citation omitted). The court thus concluded:

> In light of the Montana court's recognition that "there is a difference between (physical) injury and (mental) distress," *Johnson* [*v. Supersave Markets, Inc.*, 211 Mont. 465, 472, 686 P.2d 209, 212 (1984)], it is likely the Montana Supreme Court would follow the lead of the above-cited decisions and hold that the term "bodily injury," as used in the liability insurance policy at issue, limits coverage to *physical* injury, sickness or disease.

*Aetna*, 662 F. Supp. at 1128.

¶31    In *Jacobsen,* we concurred with the rationale set forth in *Aetna* and concluded that "the term 'bodily injury,' as defined in Farmers Union UM policy, is limited to physical injury to a person caused by an accident and does not include emotional and psychological injuries stemming therefrom." *Jacobsen*, ¶ 29. We thus held that Jacobsen's emotional injuries, "*including his physical manifestations resulting therefrom*, do not constitute 'bodily injury' as that term is defined in the contract of insurance between Farmers Union and Jacobsen . . . ." *Jacobsen*, ¶ 29 (emphasis added).

¶32    We are troubled by the analysis we employed in *Jacobsen* in a couple respects. First, *Aetna* was decided prior to the development of a significant body of court decisions which perceived a distinction between mental injuries and mental injuries with physical manifestations. *See e.g. Twin City Fire Ins. Co. v. Colonial Life & Acc. Ins. Co.*, 124 F. Supp. 2d 1243, 1247 (M.D. Ala. 2000) (applying South Carolina law, emotional trauma can constitute "bodily injury" unless the complaint contains no allegations of physical damages); *Am. Motorists Ins. Co. v. S. Sec. Life Ins. Co.*, 80 F. Supp. 2d 1280,

15

1283 (M.D. Ala. 2000) (under Florida law, allegation of physically manifested mental anguish met insurance policy's definition of "bodily injury"); *Gen. Star Indem. Co. v. Sch. Excess Liability Fund*, 888 F. Supp. 1022, 1027 (N.D. Cal. 1995) ("Physical injury resulting from emotional distress, however, constitutes 'bodily injury.'"); *State Farm Fire & Cas. Co. v. Nikitow*, 924 P.2d 1084, 1089 (Colo. App. 1995) (although the term "bodily injury" in insurance contract did not encompass purely emotional harm, coverage was available if injury was accompanied by physical manifestations); *Garvis v. Employers Mut. Cas. Co.*, 497 N.W.2d 254, 257 (Minn. 1993) ("emotional distress with appreciable physical manifestations can qualify as a 'bodily injury' within the meaning of the insurance policy"); *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1262 (N.J. 1992) (emotional distress resulting in headaches, stomach pains, nausea, and body pains constituted "bodily injury" under homeowner's insurance policy).

¶33    Reliance on *Aetna* may well have led the *Jacobsen* Court to overlook this later development in the law which addressed the distinction between these injuries.  However, without an understanding of this development, the Court was unequipped to recognize that none of the cases upon which *Aetna* relied, *American and For. Ins. Co. v. Church Schools, Diocese of Virginia,* 645 F. Supp. 628 (E.D. Va. 1986), *St. Paul Fire and Marine Ins. Co. v. Campbell County Sch. Dist. No. 1*, 612 F. Supp. 285 (D.Wyo. 1985), and *Rolette County v. Western Cas. & Sur. Co.*, 452 F. Supp. 125 (D.N.D. 1978), involved mental injuries accompanied by physical manifestations.  To the contrary, they addressed whether strictly mental injuries were included within the term "bodily injury."

16

Thus, this precedent did not provide precise authority for *Jacobsen*'s conclusion that a mental injury with physical manifestations could not constitute a bodily injury.

¶34     To further explain, *American and For. Ins. Co.* held that "bodily injury" did not include emotional damages in the absence of physical injury. *American and For. Ins. Co.*, 645 F. Supp. at 632. However, the injured party alleged "purely emotional harm," with no assertion regarding physical manifestations. *American and For. Ins. Co.*, 645 F. Supp. at 632. Similarly, in *St. Paul Fire and Marine Ins. Co.*, the court found that "[s]ince Ms. Worth is not suing for a physical injury or disease, the Court concludes that plaintiff insurance company has no duty to defend or cover any losses" and further held that emotional suffering "without physical changes" did not constitute bodily injury. *St. Paul Fire and Marine Ins. Co.*, 612 F. Supp. at 287-88. Finally, the court in *Rolette County* held that the insurer was not required to defend the insured against a complaint alleging the injured party was embarrassed and humiliated and suffered great mental anguish and emotional distress. *Rolette County*, 452 F. Supp. at 129-30. Again, the injured party in that case alleged no physical manifestations arising from the emotional injury.

¶35     Given the clear development in the law which distinguished mental injuries from mental injuries with physical manifestations, *Aetna* and the aforementioned cases it relied upon did not provide current, on-point support for *Jacobsen*'s holding that emotional injuries, "including . . . physical manifestations resulting therefrom, do not constitute 'bodily injury' as that term is defined in the contract of insurance . . . ." *Jacobsen*, ¶ 29.

17

None of those cases involved mental injuries accompanied by physical manifestations and, without more, this critical distinction was missed entirely. We should have examined the plentiful authority addressing such injuries which had developed by the time *Jacobsen* was decided in 2004 in order to provide a more accurate analysis of relevant authority. We now make the belated effort to do so.

¶36 A review of our sister states' case law, including those cases referenced above in ¶ 32, reveals that various courts have held that allegations of physically-manifested emotional distress fall within bodily injury coverage in the insurance context. *See also* Keri Farrell-Kolb, *General Liability Coverage for Claims of Emotional Distress—An Insurance Nightmare*, 45 Drake L. Rev. 981, 993 (1997) ("many courts agree that allegations of emotional distress or mental anguish come within bodily injury coverage if accompanied by allegations of physical manifestations"). The Washington Court of Appeals has observed that "many courts have held that allegations of physically-manifested emotional distress fall within 'bodily injury' coverage in the insurance context." *Trinh v. Allstate Ins. Co.*, 37 P.3d 1259, 1262 (Wash. App. Div. 2002) (citations omitted).

¶37 In *Trinh,* the plaintiff, after witnessing her friend's death in a car accident, began to experience emotional trauma accompanied by multiple physical ailments including headaches, nausea, hair loss, and weight loss. At issue was whether her injuries constituted "bodily injury" under the insurance policy, which defined bodily injury as "bodily injury, sickness, disease or death[.]" *Trinh*, 37 P.3d at 1261. The Washington

18

Court of Appeals first observed that Washington followed the view that "'in the context of purely emotional injuries, without physical manifestations, the phrase 'bodily injury' is not ambiguous. Its ordinary meaning connotes a physical problem.'" *Trinh*, 37 P.3d at 1261-62 (citation omitted). However, the Washington Court of Appeals also noted that "many jurisdictions that deny 'bodily injury' coverage for purely emotional injuries have indicated that there would be coverage if an emotional injury were accompanied by physical manifestations." *Trinh*, 37 P.3d at 1263 (citations omitted). Persuaded by this authority, it concluded that the term bodily injury "includes emotional injuries that are accompanied by physical manifestations." *Trinh*, 37 P.3d at 1264.

¶38    In *State Farm Fire and Cas. Co. v. Basham*, 520 N.W.2d 713 (Mich. App. 1994), the insurer filed a declaratory action to determine its obligations under a homeowner's insurance policy. The Michigan Court of Appeals held that "absent physical manifestations, the phrase 'bodily injury' does not include a claim for psychiatric damage" but, on the other hand, noted that "allegations of physical manifestations supported by sufficient documented evidence" would be sufficient to trigger coverage as bodily injury. *State Farm Fire and Cas. Co.*, 520 N.W.2d at 715.

¶39    We are cognizant that "[v]ery weighty considerations underlie the principle that courts should not lightly overrule past decisions." *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 403, 90 S. Ct. 1772, 1789 (1970). We have held, in this regard, that "*stare decisis* is a fundamental doctrine which reflects our concerns for stability, predictability and equal treatment . . . ." *Formicove, Inc. v. Burlington Northern, Inc.*, 207 Mont. 189,

19

194, 673 P.2d 469, 472 (1983). "Court decisions are not sacrosanct, however, and *stare decisis* is 'not a mechanical formula of adherence to the latest decision[.]'" *State v. Gatts*, 279 Mont. 42, 51, 928 P.2d 114, 119 (1996) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 172, 109 S. Ct. 2363, 2370 (1989)). We have held, as noted by Appellants, that *stare decisis* does not require us to follow "a manifestly wrong decision." *Formicove*, 207 Mont. at 194, 673 P.2d at 472 (citations omitted).

¶40   We now conclude that we manifestly erred in *Jacobsen* by failing to recognize the development in the law with regard to mental injuries with physical manifestations. Many courts have concluded in insurance interpretation cases like this one that the term "bodily injury" is ambiguous when applied to physical problems arising from a mental injury. "An ambiguity exists when an insurance contract, taken as a whole, is reasonably subject to two or more different interpretations." *Heggem v. Capitol Indem. Corp.*, 2007 MT 74, ¶ 22, 336 Mont. 429, ¶ 22, 154 P.3d 1189, ¶ 22 (citation omitted). The definition of "bodily injury" in the Allstate policy—"physical harm to the body, sickness, disease, or death"—could mean a strictly physical injury or could also include physical manifestations arising from a mental injury or sickness. "Any ambiguity in an insurance policy must be construed in favor of the insured and in favor of extending coverage." *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 2005 MT 50, ¶ 17, 326 Mont. 174, ¶ 17, 108 P.3d 469, ¶ 17 (citation omitted). We thus join other courts which have construed the term "bodily injury" within an insurance policy to include a mental or psychological injury that is accompanied by physical manifestations. We therefore hold

20

that Tiffany and Brandon's claims, to the extent they are based on physical manifestations, fall within the "bodily injury" definition of Wagner-Ellsworth's Allstate policy and may be asserted on that basis. We agree, in light of the preceding analysis, that in the context of purely emotional injuries without physical manifestations, the phrase "bodily injury" is not ambiguous and its ordinary meaning connotes a physical problem and not purely emotional injuries. *See Trinh*, 37 P.3d at 1263; *see also Kolb*, 45 Drake L. Rev. at 986-89.

¶41 We recognize that distinguishing between injuries which have physical manifestations from those which do not can be challenging. *See Pekin Ins. Co. v. Hugh*, 501 N.W.2d 508 (Iowa 1993) (noting the belief that "'every emotional disturbance has a physical aspect and every physical disturbance has an emotional aspect.'") (citation omitted). It has been held that "there is no litmus test for determining where to draw the line between emotional and physical injuries. . . ." *SL Industries, Inc. v. American Motorists Ins. Co.*, 607 A.2d 1266, 1273 (N.J. 1992). Courts have struggled with these distinctions, focusing on the facts of each case. *Compare State Farm Fire & Cas. Co. v. Westchester Inv. Co.*, 721 F. Supp. 1165, 1167 (C.D. Cal. 1989) (dry throat, rise in body temperature, and knot in stomach were sufficient physical manifestations of emotional distress to constitute bodily injury), *W. Cas. & Sur. Co. v. Waisanen*, 653 F. Supp. 825, 832 (D.S.D. 1987) (allegation of high blood pressure was sufficient to bring within definition of bodily injury), and *Trinh*, 37 P.3d at 1264 (bodily injury includes emotional distress where it is accompanied by physical symptoms such as weight loss, sleep loss,

21

headaches, stomach pains, and muscle aches) *with Farm Bureau Mut. Ins. Co. of Michigan v. Hoag*, 356 N.W.2d 630, 633 (Mich. App. 1984) ("bodily injury" does not encompass damages for humiliation, mental anguish, and mental suffering; at a minimum, physical manifestation of mental suffering is necessary to satisfy bodily injury requirement), *Economy Preferred Ins. Co. v. Jia*, 92 P.3d 1280, 1284 (N.M. App. 2004) ("crying, shaking, and sleep difficulties are not enough"), and *SL Indus., Inc.*, 607 A.2d at 1273-75 ("bodily injury" does not include emotional distress claims accompanied only by allegations of "loss of sleep, loss of self esteem, humiliation and irritability").

¶42     We echo the statement made by the Supreme Court of New Jersey in a similar case that although, as a result of this holding, "a few plaintiffs may be tempted to assert emotional distress with accompanying physical manifestations more often, that will not necessarily obligate insurers to undertake unbounded duties to defend and indemnify. When an emotional distress claim is not supported factually, the insurer can and should move to dismiss the meritless claims." *Voorhees*, 607 A.2d at 1262.  Each case must necessarily be judged by its own facts to determine whether the alleged injuries are sufficiently akin to physical injuries to fall within coverage for "bodily injury."  Such conditions include those which are susceptible to medical diagnosis and treatment in a manner which distinguishes them from mental injuries.  *See State Farm Fire and Cas. Co.*, 520 N.W.2d at 715 ("At a minimum, there must be allegations of physical manifestations supported by sufficient documented evidence in order for insurance coverage to be triggered.").

22

**CONCLUSION**

¶43   Appellants have raised a genuine issue of material fact about whether Tiffany and Brandon suffered mental injuries with physical manifestations.  Such injuries would be covered within the subject policy's definition of "bodily injury."  Accordingly, we reverse the trial court's summary judgment order.  Appellants have requested an award of attorney fees, which is denied.

¶44   Reversed and remanded for further proceedings consistent with this Opinion.


/S/ JIM RICE


We concur:


/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER


23