FILED

06/13/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0561

DA 16-0561

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 143

JESSICA HUCKINS,

        Plaintiff and Appellant,

   v.

UNITED SERVICES AUTOMOBILE ASSOCIATION,

        Defendant and Appellee.

APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV 15-331
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Jesse C. Kodadek, Worden Thane, P.C., Missoula, Montana

        For Appellee:

                David M. McLean, Ryan C. Willmore, McLean & Associates,
PLLC, Missoula, Montana

Submitted on Briefs:  April 19, 2017

Decided:  June 13, 2017

Filed:

                                  Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Jessica Huckins (Huckins) appeals the order of the Twenty-First Judicial District Court, Ravalli County, granting summary judgment in favor of Appellee United Services Automobile Association (USAA), and holding that USAA did not breach its duty to defend under policies held by the insured. We reverse and address the following issue:

*Did the District Court err by holding that USAA did not breach its duty to defend under the homeowner's policies or the renter's policy?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Barry Van Sickle (Van Sickle) purchased a home in Stevensville, Montana, in 2001. In 2010, Van Sickle placed the home for sale and, in the process, completed a Seller's Property Disclosure Statement Montana Association of Realtors® Standard Form (Disclosure). The Disclosure requested the seller to "Please describe any Adverse Material Facts concerning the items listed or other components, fixtures or matters," followed by a request for information about the "BASEMENT: (Leakage, Flooding, Moisture or evidence of Water, and Fuel Tanks)." In the blank next to this request, Van Sickle wrote "N\A."

¶3 On January 28, 2014, Huckins conveyed an offer on Van Sickle's home. Van Sickle accepted the offer on January 29, 2014, and, "[s]oon thereafter," the Disclosure completed by Van Sickle was provided to Huckins. Prior to closing, Huckins paid for a home inspection and inquired into home insurance costs. The inspection revealed that there was an "unconventional" sump pump in the basement, and the home insurance quotes indicated

that a claim for flooding in the home had been made in 2011. Huckins closed on the transaction in March 2014, but upon entering the home after the closing, she found the basement flooded.

¶4 Huckins filed a complaint against Van Sickle and his real estate agent[1] (Underlying Complaint). The Underlying Complaint stated that the Disclosure's question about the basement was "left blank by Van Sickle" and provided a screenshot of that question with a blank answer. Huckins alleged that Van Sickle should have disclosed the previous basement flooding problems and set forth claims of negligent misrepresentation, negligence, fraud and fraudulent misrepresentation, constructive fraud, violations of the Montana Consumer Protection Act, deceit, breach of the covenant of good faith and fair dealing, and for punitive damages.

¶5 At times related to the events stated by the Underlying Complaint, Van Sickle held three insurance policies through USAA. From 2001 to January 3, 2014, Van Sickle was covered by an annually renewing homeowner's policy, with identical terms each year (Pre-2014 Policy). When the policy renewed for the January 4, 2014 to January 4, 2015 term, USAA added additional exclusions, including one that excluded coverage for damages "arising out of your failure, intentionally or unintentionally, to disclose information regarding the sale or transfer of real or personal property." (2014 Policy) (collectively "Homeowner's Policies"). The Homeowner's Policies both included personal

---

[1] The allegations against the real estate agent were settled and are not before the Court.

liability protection that provided both indemnity and a defense "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies." In addition to the Homeowner's Policies, Van Sickle, who at the time had moved to and rented a home in California, had a renter's policy that ran from March 15, 2014, to March 15, 2015 (Renter's Policy).

¶6 Van Sickle tendered the Underlying Complaint to USAA, who conducted a telephone interview with Van Sickle and his wife, Michelle Van Sickle (Michelle). Following the interview, USAA sent a letter to Van Sickle denying coverage for the claims stated in the Underlying Complaint, stating "[t]he allegations are concerning alleged misrepresentation and concealment of material facts concerning the sale of property," and that the policy required an "occurrence as defined" to provide coverage, noting that "[m]isrepresentation and concealment is not an accident and does not give rise to an occurrence." USAA's letter also cited the exclusion for "property damage to property owned by an insured."

¶7 Van Sickle then settled the underlying litigation with Huckins by way of a consent judgment of $300,000 and Van Sickle's assignment of all claims under his insurance policies to Huckins in exchange for a covenant not to execute. The District Court entered the consent judgment on June 25, 2015, concluding it was "reasonable in light of the facts and circumstances of this case, and the risks and costs of litigation." Huckins then brought the instant case against USAA, stating claims for breach of duty to defend Van Sickle,

4

breach of contract, violations of the Montana Unfair Trade Practices Act, breach of the covenant of good faith and fair dealing, and punitive damages. Huckins and USAA moved for summary judgment on the primary issue of whether USAA had breached its duty to defend Van Sickle. The District Court reasoned that the claim did not constitute an "occurrence" as defined by the policies held by Van Sickle, and that USAA had therefore not breached its duty to defend under either the Homeowner's Policies or the Renter's Policy.

¶8 Huckins appeals. Additional facts will be referenced herein.

## STANDARDS OF REVIEW

¶9 A district court's grant of summary judgment is reviewed de novo, applying the same criteria as the district court. *J & C Moodie Props., LLC v. Deck*, 2016 MT 301, ¶ 15, 385 Mont. 382, 384 P.3d 466 ([hereinafter *J & C Moodie*]) (citing *State Farm Fire & Cas. Co. v. Schwan*, 2013 MT 216, ¶ 12, 371 Mont. 192, 308 P.3d 48). Under M. R. Civ. P. 56(c), judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *J & C Moodie*, ¶ 15 (citing *Roe v. City of Missoula*, 2009 MT 417, ¶ 14, 354 Mont. 1, 221 P.3d 1200).

¶10 If no material facts are in dispute, the question of whether or not an insurer breached its duty to defend is a question of law. *J & C Moodie*, ¶ 17 (citing *Schwan*, ¶ 12). Questions

of law are reviewed for correctness. *J & C Moodie*, ¶ 17 (citing *State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, ¶ 22, 372 Mont. 191, 312 P.3d 403).

**DISCUSSION**

¶11 *Did the District Court err by holding that USAA did not breach its duty to defend under the homeowner's policies or the renter's policy?*

¶12 Huckins argues that USAA breached its duty to defend because USAA deemed Van Sickle's acts to be intentional, and not an accidental "occurrence" covered by the policy, even though Van Sickle reported to USAA in the interview that he did not understand the scope of the information the Disclosure was asking him to supply about the property. Huckins also argues that the District Court erred by resolving any doubt about the allegations as stated in the Underlying Complaint in favor of USAA, instead of in favor of coverage.

¶13 USAA argues that the Underlying Complaint "failed to assert 'bodily injury' as defined in the policy" and that the District Court correctly concluded that there was no "occurrence," under either the Homeowner's Policies or the Renter's Policy. USAA also argues that, while the District Court reached the right result on these grounds, the "Failure to Disclose" exclusion in the 2014 Policy provided an unequivocal demonstration that the facts alleged in the underlying lawsuit did not fall within the 2014 Policy's coverage, and the Renter's Policy is not applicable to the home in Stevensville.

¶14 "The duty to defend arises when a complaint against an insured alleges facts, which if proven, would result in coverage." *J & C Moodie*, ¶ 20 (citing *Farmers Union Mut. Ins.*

6

*Co. v. Staples*, 2004 MT 108, ¶ 21, 321 Mont. 99, 90 P.3d 381; *Schwan*, ¶ 15; *Freyer*, ¶ 26; *Tidyman's Mgmt. Servs. v. Davis*, 2014 MT 205, ¶ 22, 376 Mont. 80, 330 P.3d 1139). "Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Staples*, ¶ 22; *J & C Moodie*, ¶ 20; *accord Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 2009 MT 123, ¶ 32, 350 Mont. 184, 206 P.3d 919.

¶15    "[T]o determine whether [the insurer] had a duty to defend [the insured], we . . . look first to the terms of the policy, and next to the facts alleged [in the] complaint." *Landa v. Assurance Co. of Am.*, 2013 MT 217, ¶ 19, 371 Mont. 202, 307 P.3d 284 (citing *Lloyd A. Twite Family P'ship v. Unitrin Multi Line Ins.*, 2008 MT 310, ¶ 7, 346 Mont. 42, 192 P.3d 1156). Further, an insurer's duty to defend may arise from an insurer's knowledge of "facts obtained from outside the complaint." *Revelation Indus., Inc.*, ¶ 39. "An insurer cannot ignore knowledge of facts that may give rise to coverage under the policy simply because the complaint . . . does not allege these facts of which the insurer has knowledge." *Revelation Indus., Inc.*, ¶ 39.

¶16    Exclusions in policies "must be narrowly and strictly construed because they 'are contrary to the fundamental protective purpose of an insurance policy.'" *Newman v. Scottsdale Ins. Co.*, 2013 MT 125, ¶ 35, 370 Mont. 133, 301 P.3d 348 (quoting *Farmers Union Mut. Ins. Co. v. Oakland*, 251 Mont. 352, 356, 825 P.2d 554, 554 (1992)). "[A]ny ambiguity in an insurance policy must be construed against the insurer." *Newman*, ¶ 41 (citing *Wendell v. State Farm Mut. Auto. Ins. Co.*, 1999 MT 17, ¶ 14, 293 Mont. 140, 974

P.2d 623).  "An ambiguity exists when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations."  *Wendell*, ¶ 14 (citing *Farmers Alliance Mut. Ins. Co. v. Holeman*, 1998 MT 155, ¶ 25, 289 Mont. 312, 961 P.2d 114).

**Homeowner's Policies**

¶17    The District Court conducted an analysis under both homeowner's policies, noting that they had substantively identical definitions of "occurrence" and other definitions, and concluding that Huckins had failed to allege an "occurrence" under either policy as that term was defined in *Employers Mutual Casualty Company v. Fisher Builders, Inc.*, 2016 MT 91, 383 Mont. 187, 371 P.3d 375 [hereinafter *Fisher Builders*].

¶18    Regarding the Pre-2014 Policy, the record indicates that Huckins made the offer on Van Sickle's home on January 28, 2014, and Van Sickle accepted the offer the next day. Huckins admits that she received the Disclosure "[s]oon thereafter."  As such, the 2014 Policy, which became effective on January 4, 2014, is the only homeowner's policy under which coverage must be analyzed.  "[A] claim or cause of action accrues when all elements of the claim or cause exist or have occurred."  Section 27-2-102(1)(a), MCA; *accord O'Connor v. Nat'l Union Fire Ins. Co.*, 2004 MT 65, ¶ 12, 320 Mont. 301, 87 P.3d 454. Huckins' claims against Van Sickle all accrued after the Pre-2014 Policy had expired, and after the 2014 Policy went into effect, on January 4, 2014.  Therefore, USAA did not breach its duty to defend under the Pre-2014 Policy because it was not in effect.

8

¶19 The 2014 Policy contained a "Failure to Disclose" exclusion that barred coverage for "'bodily injury' or 'property damage' arising out of your failure, intentionally or unintentionally, to disclose information regarding the sale or transfer of real or personal property." The Underlying Complaint made eight claims against Van Sickle. First, under negligent misrepresentation, Huckins alleged that "Van Sickle represented through the Seller's Property Disclosure Statement that he knew [of] no events of basement leakage, flooding, moisture, or evidence of water." Second, the negligence claim alleged that "[a]s a seller, Van Sickle had a duty to obtain and communicate information on the true condition of the property" and he breached that duty when he failed to disclose the 2011 flood event. Third, the fraud/fraudulent misrepresentation claim alleged that "[w]hen Van Sickle made written representations that there were no flooding or water related deficiencies in the basement he made false representations of a material fact." Fourth, the constructive fraud claim alleged that "[a]s the seller . . . Van Sickle . . . had a duty to disclose all adverse material facts concerning the property in order to avoid the misrepresentation or concealment of pertinent facts." Fifth, Huckins alleged the Montana Consumer Protection Act had been violated when Van Sickle "engaged in deceptive acts or practices prior to Huckins' purchase of the property." Sixth, the deceit claim alleged that "[Van Sickle] suggested or asserted facts that were untrue, or, alternatively, [he] suppressed facts that were true" "with the intent to induce Huckins to purchase the property." Seventh, under breach of the covenant of good faith and fair dealing, Huckins alleged that "[b]y not disclosing the 2011 flood and its continuing nature, Van Sickle deprived Huckins of certain

9

benefits of the Buy/Sell Agreement and her eventual purchase of the property through dishonesty and commercially unreasonable conduct." Finally, claiming punitive damages, Huckins alleged that "[Van Sickle] acted with actual malice as [he] had knowledge of material facts [he was] obligated to disclose to Huckins concerning the property, and knew their lack of disclosure would create a high probability of injury to Huckins."

¶20 Even reading it "narrowly and strictly," *Newman*, ¶ 35, the Failure to Disclose Exclusion clearly excludes coverage for an insured's failure to disclose information "regarding the sale or transfer of real . . . property." There is no ambiguity as applied to the record here. Each allegation in the Underlying Complaint is premised upon Van Sickle's alleged failure to provide information regarding the 2011 flood or general flood conditions in the area to Huckins. As such, the exclusion must apply and "there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage." *Staples*, ¶ 22. Therefore, as to this policy, USAA had no duty to defend Van Sickle.

**Renter's Policy**

¶21 The Renter's Policy was in effect from March 15, 2014, to March 15, 2015. The closing of the transaction occurred in March of 2014, so the alleged damage potentially occurred while the policy was in effect, and no proof or argument is offered otherwise. Although denominated a renter's policy, the policy provided both property coverage and personal liability coverage under substantively the same terms as the Homeowner's

10

Policies. However, unlike the 2014 Policy, the Renter's Policy did not contain a Failure to Disclose exclusion.

¶22 The Renter's Policy states that "[i]f claim is made or suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an occurrence to which this coverage applies," a defense and indemnity up to the policy's limits would be provided. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: 'bodily injury'; or 'property damage'." In turn, "bodily injury" is defined as "bodily harm, sickness, or disease, including required care, loss of services and death that results," and "property damage" is defined as "physical injury to, destruction of, or loss of use of tangible property."

¶23 The Underlying Complaint does not state a claim for "bodily injury" as we have interpreted the term used in this policy. In *Allstate Ins. Co. v. Wagner-Ellsworth*, 2008 MT 240, 344 Mont. 445, 188 P.3d 1042, we held that the term "bodily injury" incorporated not only "physical harm to the body, sickness, disease, or death," but also "mental or psychological injury that is accompanied by physical manifestations." *Wagner-Ellsworth*, ¶ 40. However, the Underlying Complaint does not allege such injuries, claiming only that Huckins experienced "concern[] for the health and well being of her daughters as well as her own," and "pain, suffering, anxiety, stress, and emotional distress." None of these are asserted to be "physical manifestations" of physical injuries or actual "bodily harm, sickness, or disease." As such, Huckins did not plead a bodily injury.

11

¶24 However, the Underlying Complaint states a claim for "property damage" under the policy. Huckins alleged that, after closing, she "found the basement flooded." She stated that she had "sustained damages" and that "extensive repairs" and "other remedial work" would be necessary to "restore the property." These allegations are sufficient to state a claim for "physical injury to, destruction of, or loss of use of tangible property," as defined in the Renter's Policy. Having concluded that the Underlying Complaint stated a claim under the Renter's Policy, we next consider whether USAA breached the duty to defend Van Sickle against the Underlying Complaint.

¶25 After the Underlying Complaint was filed, USAA conducted a recorded interview with Van Sickle and his wife, Michelle. In the interview, Michelle indicated that the Van Sickles had not disclosed the earlier flooding of the house because they understood the Disclosure form to be asking about current problems, not prior problems. She stated that "he [Van Sickle] left it blank because we at that time there was nothing and we knew that there was no . . . mold or or [sic] anything because we had everything professionally fixed . . . so they left that part blank." She further explained that they had sold four houses in Texas, where they were required to complete another disclosure document that was not required in Montana and were there asked to provide information on other problems they knew about the house, but that such questions were not asked on the Disclosure form for this transaction, which they found "very misleading."

¶26 The District Court reasoned that an "occurrence" under the policy was not alleged because (1) the Underlying Complaint stated that Van Sickle acted with intent in

12

completing the Disclosure, and (2) the alleged property damage "could reasonably be expected to (objectively) result from such act," that is, that a buyer could reasonably be expected to sustain such property damage if she was induced to purchase the home by relying on Van Sickle's intentional statement. This analysis was based upon our decision in *Fisher Builders*, in which we clarified our jurisprudence regarding the interpretation of the term "occurrence" and, correspondingly, its common policy definition as an "accident," and when an intentional act could be considered an "accident" for purposes of insurance coverage. We held that "the policy language defining 'accidents' may include intentional acts if the damages were not objectively intended or expected by the insured." *Fisher Builders*, ¶ 20.

¶27    In a critical distinction from this case, in *Fisher Builders* the insurer defended the insured under a reservation of rights in the underlying litigation and initiated a declaratory action to determine whether the policy provided coverage for the claim under which it had a duty to indemnify the insured. *Fisher Builders*, ¶ 7. Thus, in *Fisher Builders*, we were faced with a duty to indemnify issue, not a duty to defend issue. "The duty to defend is independent from and broader than the duty to indemnify created by the same insurance contract." *Staples*, ¶ 21; *accord Schwan*, ¶ 15; *Freyer*, ¶ 26 (holding the duty to indemnify is "narrower than the duty to defend"). Unless there exists "an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Staples*, ¶ 22; *J & C Moodie*, ¶ 20. Above, we concluded that such an unequivocal demonstration was made under the Failure to Disclose exclusion

13

of the 2014 Policy. However, the same conclusion cannot be reached under the Renter's Policy.

¶28 The statements given by the insureds during the interview[2] indicated they were confused about the Disclosure form and how to complete it accurately, raising a legitimate question about whether they intended to provide inaccurate content in their answers. It could be argued in an indemnification case that, whatever the content of their answers, the insureds intended to provide the answers, and thus acted intentionally, not accidentally, which did not constitute an "occurrence." However, here we consider the duty to defend, and such nuanced arguments about intent make it impossible to conclude that there was "an unequivocal demonstration" that Huckins' claims fell outside the Renter's Policy. Without such a demonstration, USAA had a duty to defend Van Sickle, at least until a ruling was obtained declaring there was no coverage. By failing to defend Van Sickle, USAA breached its duty to defend.

¶29 The same reasoning applies to USAA's argument that coverage is excluded under the "owned home" exclusion in the Renter's Policy. The Renter's Policy states that it does not cover liability "arising out of a premises: (1) owned by an 'insured' . . . that is not an 'insured location'." An "insured location" is further defined to include "a one to four family residence" or "that part of any building where you reside" if used as your "principal place of residence." It also includes "the part of other premises, other structures and

---

[2] We again note the holding of *Revelation Industries, Inc.* that an insured's duty to defend may arise from "knowledge of facts obtained from outside the complaint." *Revelation Indus., Inc.*, ¶ 39.

14

grounds used by you as another residence" or "any premises used by you in connection with a or b above."

¶30 However, as the record indicates and the parties do not factually dispute, the alleged tort claims arose *after* closing—after the house had been sold to Huckins. Van Sickle did not own the house at that time, and thus the claims did not arise out of "premises owned by an insured," which would exclude the personal liability coverage under the Renter's Policy. This presents another nuanced issue in the interpretation of the policy. USAA urges us to follow foreign authority construing the phrase "owned by an insured" to include both properties that are currently owned and those that were previously owned by an insured. Such an interpretation would make the exclusion applicable, barring coverage and eliminating any duty to indemnify under the policy. Once again, this argument could fairly be made in an indemnification case. However, the necessity of such analysis renders it impossible to conclude in a duty to defend case that there was "an unequivocal demonstration" that Huckins' claims fell outside the Renter's Policy. Further, it must be considered that "[e]xclusions must be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy." *Newman*, ¶ 35 (internal quotations omitted). Consequently, this exclusion did not relieve USAA from the duty to defend Van Sickle.

¶31 "[W]hen an insurer improperly abandons its insured, the insured is justified in taking steps to limit his or her personal liability." *J & C Moodie*, ¶ 29 (citation omitted). In light of USAA's abandonment, Van Sickle was justified in entering the stipulated settlement,

15

which was the "natural and ordinary consequence" of USAA's breach. *Indep. Milk & Cream Co. v. Aetna Life Ins. Co.*, 68 Mont. 152, 157, 216 P. 1109, 1110 (1923). "[W]here the insurer refuses to defend a claim and does so unjustifiably, that insurer becomes liable for defense costs and judgments." *Staples*, ¶ 20 (citation omitted).

¶32    As we have stated repeatedly, "[i]f an insurer believes a policy exclusion applies, the prudent course of action is to defend under a reservation of rights and file a declaratory action to resolve the coverage question." *J & C Moodie*, ¶ 22; *accord Freyer*, ¶ 37; *Staples*, ¶ 28; *Diacon ex rel. Palmer v. Farmers Ins. Exch.*, 261 Mont. 91, 102, 861 P.2d 895, 902 (1993); *St. Paul Fire & Marine Ins. Co. v. Cumiskey*, 204 Mont. 350, 358, 665 P.2d 223, 227 (1983). "When an insurer defends the insured, it also defends itself against a duty to defend claim." *J & C Moodie*, ¶ 28. Here, USAA failed to do so.

¶33    We reverse and remand for proceedings consistent with this Opinion.


                                                        /S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR

16