DA 11-0112

FILED

October 18 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 258

WALTER FASCH,

        Plaintiff and Appellant,

   v.

M.K. WEEDEN CONSTRUCTION, INC.,
a Montana Corporation; UNITED RENTAL
TECHNOLOGIES, INC., and MONTANA
DEPARTMENT OF TRANSPORTATION,

        Defendants and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Sixteenth Judicial District,<br>In and For the County of Rosebud, Cause No. DV 07-113<br>Honorable Joe L. Hegel, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

        Jeffrey A. Simkovic, Billings Legal, PLLC; Billings, Montana

        For Appellees:

        Lon J. Dale; Milodragovich, Dale, Steinbrenner & Nygren, PC;
        Missoula, Montana (for United Rental Highway Technologies, Inc.)

        Malin Stearns Johnson, Peter J. Stokstad; Garlington, Lohn & Robinson,
        PLLP; Missoula, Montana (for M.K. Weeden Construction and State of
        Montana Department of Transportation)

                           Submitted on Briefs:  August 3, 2011

                                   Decided:  October 18, 2011

Filed:

                     _____
                                  Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Plaintiff Walter Fasch (Fasch) was injured in a single-vehicle ATV accident that occurred within a construction area on U.S. Highway 59 between Rock Springs and Angela, Montana, near Miles City. Fasch filed a negligence action in the Sixteenth Judicial District, Rosebud County, against the Montana Department of Transportation (DOT), M.K. Weeden (Weeden), the construction contractor, and Weeden's subcontractor, United Rental Technologies, Inc. (United), which was in charge of signage in the construction area. The District Court entered Findings of Fact, Conclusions of Law, and an order granting summary judgment in favor of DOT, Weeden, and United (collectively Defendants), from which Fasch appeals. We reverse and remand for further proceedings. We consider:

¶2 *Did the District Court err by granting Defendants' motion for summary judgment?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 On Saturday, October 2, 2004, Fasch drove his three-wheeled ATV from his home to the home of his friend, Jason Hirsch (Hirsch), to deliver some fresh produce. In order to travel to and from Hirsch's house, Fasch drove over U.S. Highway 59, which was then under construction. On his return trip from Hirsch's house, Fasch was involved in a one-vehicle accident within the construction zone. Fasch's ATV rolled several times, and he was injured.

¶4 Vehicles traveling through the construction zone were routed over the "old highway," which was paved and abutted the "new highway" being constructed by

2

Weeden. At the time of the accident, the new highway consisted of packed fill dirt and was not yet paved. The elevation of the new highway was 2 ½ feet higher than the old highway.

¶5     The parties offered differing versions of what occurred in the accident. Fasch asserts he was driving his ATV on the old highway where vehicles traversing the construction zone were routed. He claims he was "hugging" the right-hand side of the road, where the elevation differential would have been, when one of his wheels struck or fell into a culvert hole he claims extended onto the old highway. In his deposition, Fasch stated, ". . . I was just driving up right along this edge right here, and that's when I hit the hole." When asked how far into the pavement the hole extended, Fasch replied, "It wasn't even a foot, I don't think. I was right up against, riding on the edge of this, so it didn't take much for it to slip into the hole." Fasch testified that this caused his ATV to roll several times and come to rest on the fill dirt of the new highway, right side up and still running.

¶6     The Defendants assert Fasch was not driving on the old highway but was in the area of the elevated fill dirt of the new highway where vehicles were not allowed. Counsel for United argued at the summary judgment hearing that "from the record that was existing in terms of the signage and the location of the three-wheeler tracks, Mr. Fasch was traveling off the traveled way." The Defendants contend that as Fasch was driving on the fill dirt of the new highway, he came upon the culvert hole, crashed into it, and rolled. The Defendants claim the culvert hole was almost two feet away from

3

the edge of the old highway, and Fasch could not have hit the hole while driving on the pavement. At the summary judgment hearing, the attorney for Weeden and DOT stated that measurements demonstrated the hole was two feet away from the pavement. The parties do not dispute that the ATV came to a stop on all three wheels on the fill dirt of the new highway.

¶7 Fasch was knocked unconscious for some period of time and upon regaining consciousness, crawled to his ATV, reversed directions, and drove back to Hirsch's house. Hirsch realized Fasch was in need of immediate medical attention and decided to take him to the hospital in Miles City. Because Fasch was having difficulty breathing, Hirsch stopped at the crash site on the way to the hospital to retrieve Fasch's inhaler, which had been lost during the accident. Fasch was later taken to Billings for treatment of a punctured lung, broken rib, and other injuries.

¶8 After taking Fasch to the hospital, Hirsch returned to the crash site to gather Fasch's belongings that were strewn about. He saw one set of three-wheeler tracks in the fill dirt, which he first assumed had been left by Fasch when approaching the culvert hole. About this initial conclusion, Hirsch later explained in an affidavit:

> At the time, I did not take into consideration the three-wheeler tire marks [Fasch] had to have made when he got back onto his three-wheeler and drove back south to my place to get help. Because I saw a set of tracks on the south side, I assumed that meant that he was approaching the hole from fill. Because I made that assumption right off, I didn't stop to look to see if there were any marks at the edge of the pavement where it tips toward the hole, where he could have caught an edge and gone in.

4

Hirsch also saw indications that the three-wheeler had rolled several times, and the handle bars or baskets affixed to the ATV had gouged into the fill dirt. Hirsch gathered items that were strewn about the site and returned to his house.

¶9 While the record contains some ambiguity on the question, it appears Hirsch did not see any signage, cones, or warnings around the culvert hole itself, though he did see signs informing the traveling public of a detour. In his deposition, he stated:

> **Q. Were there any signs?**
> A. No.
> **Q. Any cones?**
> A. No, and I –
> **Q. Any flags?**
> A. No.
> **Q. Any kind of warning at all?**
> A. Not on the hole that he hit.

Hirsch indicated there were detour signs on the road some distance before the culvert hole that directed traffic onto the old highway.

¶10 Two days after the accident, on Monday, October 4, 2004, DOT Project Manager Jay Fleming and two other DOT employees conducted an inspection of the accident scene. One of the DOT employees summoned Hirsch, who pointed out to the DOT employees that signs, which were then near the culvert hole, had not been there two days earlier when the wreck occurred. In his deposition, Hirsch testified:

> **Q. So the site was basically unchanged from the time of the accident until Monday, when you went there with the State folks**?
> A. No, it was not unchanged.
> **Q. What was changed from Saturday afternoon to Monday morning?**
> A. And I stated this to the State guys. There were cones set up on the highway right where the hole was, and there was [sic] flags stuck in the ground warning of the site, you know, orange flags and stuff.

5

Fleming claims the signs, which were near the culvert during the inspection on Monday, were also there the previous Friday, the day before the accident. Fleming stated, "I know what they looked like Friday when I left, and I know what they looked like Monday when I got back." At his deposition, Fleming was asked: "And would it be a fair statement that according to my understanding of the diagram, that these vertical panels would have been just off the paved way and between the paved way and where this culvert started, am I correct on that?" "Yes," Fleming replied. Because the signs were the same on Monday as they were the preceding Friday, Fleming believes they were there on Saturday when the wreck occurred. Both Fleming and Hirsch made diagrams of the accident scene, with Hirsch's lacking signs and with Fleming's containing signs.

¶11 Fleming unsuccessfully attempted to take photographs of the scene. When asked by Fasch's counsel about the fate of the photographs, Fleming replied, "[f]or lack of a better term, the camera ate them." The parties made no other efforts to memorialize the tracks or demonstrate how they were made by the ATV, and there was no photographic evidence of the culvert hole to demonstrate its proximity to the old highway.

¶12 The parties agree only one set of tracks was made in the fill dirt. However, they disagree about whether the tracks were made while Fasch was approaching or leaving the culvert area. Defendants argue the tracks were made by Fasch when he was approaching the culvert hole on the fill dirt. United's counsel stated, "[w]e believe that the record establishes very clearly that he was off the traveled way and that that was his intention all along to be driving, basically, in the burrow pit." Fasch counters that he made the tracks

when driving back to Hirsch's house for help after overturning onto the fill dirt and that he initially struck the culvert hole while driving on the paved old highway. As noted by Fasch's counsel at the hearing, "Walter testified that he only drove on the fill dirt after the accident when he returned to Hirsch's residence after his ATV flipped up onto the dirt from the paved highway." Fasch offered that two sets of tracks would have been present if he had initially driven his ATV on the fill dirt—one set leading up the culvert hole and one set leading away.

¶13 As discussed in further detail herein, the District Court granted the Defendants' motions for summary judgment. Fasch appeals.

## STANDARD OF REVIEW

¶14 We review orders granting summary judgment de novo, using the same criteria and evaluation the district court used pursuant to Rule 56(c), M. R. Civ. P. *Schmidt v. Washington Contractors Group, Inc.*, 1998 MT 194, ¶ 7, 290 Mont. 276, 964 P.2d 34 (citing *Wiley v. City of Glendive*, 272 Mont. 213, 216, 900 P.2d 310, 312 (1995)). Under Rule 56(c), M. R. Civ. P., summary judgment is proper only when the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show no genuine issues of material fact exist and when the moving party is entitled to judgment as a matter of law.

**DISCUSSION**

¶15 *Did the District Court err in granting Defendants' motion for summary judgment?*

¶16 Under Rule 56(c), M. R. Civ. P., summary judgment is appropriately granted only when there is an absence of a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Prindel v. Ravalli County*, 2006 MT 62, ¶ 19, 331 Mont. 338, 133 P.3d 165. If the moving party satisfies this requirement, the burden shifts to the non-moving party to "show by more than mere denial, speculation, or conclusory statements, that a genuine issue of material fact exists." *Prindel*, ¶ 19 (quoting *LaTray v. City of Havre*, 2000 MT 119, ¶ 14, 299 Mont. 449, 999 P.2d 1010). The Court is to view the evidence in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in favor of the party opposing summary judgment. *Prindel*, ¶ 19. We have observed that summary judgment is an "extreme remedy." *Hajenga v. Schwein*, 2007 MT 80, ¶ 11, 336 Mont. 507, 155 P.3d 1241.

¶17 "[A]t the summary judgment stage, the court does not make findings of fact, weigh the evidence, choose one disputed fact over another, or assess the credibility of witnesses." *Andersen v. Schenk*, 2009 MT 399, ¶ 2, 353 Mont. 424, 220 P.3d 675. Ordinarily, questions of negligence are "poorly suited" for adjudication by summary judgment and are better left for determination by a jury at trial. *LaTray*, ¶ 15.

8

¶18     Here, the parties disputed whether Fasch was driving on the fill dirt or on the old highway when the accident occurred, whether the set of tracks led to or away from the culvert hole, whether the culvert hole abutted the old highway or whether it was two feet away, and whether signage was present in the immediate area of the culvert hole at the time the accident occurred.  In its order granting summary judgment, the District Court entered the following Findings of Fact, based on its review of the record:

> 2.  At the time of the accident, Fasch was driving his ATV in the barrow pit approximately eight feet off the edge of the traveled way in an area of packed dirt . . . .
>
> 3.  The area where Fasch was driving . . . was not intended to be used as a path for vehicles . . . .
>
> 5.  At the time of the accident, there were three vertical panels just off the paved way and where the culvert started . . . .  In addition, there were two ultra panels, one on both sides of the vertical panels . . . .  These panels delineated the traveled way from the fill area, where Fasch drove his three-wheeler . . . .
>
> 6.  Prior to construction, the State ensured that the signage was proper for the project . . . .
>
> 9.  If Fasch would have been driving on the asphalt portion of the highway, which had been marked by United Rentals, he would not have come into contact with the hole . . . .
>
> 11.  A diagram created by representatives from the State of Montana, after inspection of the accident site, depicts Hirsch's [sic] ATV tracks in a fill area off the asphalt highway designated for travel . . . .
>
> 12.  Although Fasch claims he was driving on the asphalt . . . the physical evidence at the scene of the accident refutes this claim . . . .

In entering its findings and for its reliance on the physical evidence, the District Court cited the decision of the United States Supreme Court in *Scott v. Harris*, 550 U.S. 372,

9

127 S. Ct. 1769 (2007). In *Scott*, the defendant police officer sought summary judgment on plaintiff's claim that the officer had used excessive force during a high speed chase of plaintiff and offered a videotape from the dash camera of a police cruiser. *Scott*, 550 U.S. at 374-76, 127 S. Ct. at 1772-73. Plaintiff opposed summary judgment by offering his version of the chase, wherein he claimed he was driving safely and courteously. *Scott*, 550 U.S. at 378-79, 127 S. Ct. at 1775. The Supreme Court reasoned that the videotape "so utterly discredited" the plaintiff's version of the chase "that no reasonable jury could have believed him." *Scott*, 550 U.S. at 380, 127 S. Ct. at 1776. The Supreme Court held, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380, 127 S. Ct. at 1776.

¶19    The District Court here concluded that, like the video in *Scott*, the ATV tracks constituted irrefutable physical evidence that Fasch had approached the culvert hole while driving on the fill dirt. ("Fasch's testimony, which was refuted by the physical evidence at the scene of the accident, is insufficient to raise a genuine issue of material fact . . . . This case is similar [to *Scott*] because the physical evidence of tire marks from the three-wheeler contradicts Fasch's statements that he was not driving in the fill area.") The District Court determined that Fasch could not have hit the culvert hole had he been driving on the old highway.

¶20 However, although tracks made in fill dirt are indeed "physical evidence," the Defendants here have not captured and produced this evidence. They did not provide an imprint or photographs with an analysis to demonstrate the direction the ATV was traveling when it made the tracks or provide physical evidence of the proximity of the culvert hole to the old road. Defendants merely produced witness recollection and a diagram depicting a single set of tracks in the fill dirt and the location of the culvert. Fasch produced the same—witness recollection and a diagram—to support his theory that the tracks were made when he drove over the fill dirt to return to Hirsch's house. Thus, the Defendants' evidence here does not provide nearly the weight or significance of the videotape in *Scott* and cannot be said to have "so utterly discredited" Fasch's testimony that "no reasonable jury could have believed him." *Scott*, 550 U.S. at 380, 127 S. Ct. at 1776. Given the evidence offered by the parties here, Fasch established a genuine issue of material fact.

¶21 The District Court also weighed the evidence inappropriately when it found that signage was in place to direct travelers away from the culvert hole and toward the old highway. Based upon the weighing of evidence, the District Court concluded Fasch had failed to stay on the old highway in violation of § 61-8-328 (1), (3) and § 61-8-314, MCA (2003), and as a result, the Defendants owed no duty to Fasch because he was an unforeseeable plaintiff who was not in the zone of risk.

¶22 We conclude that "reasonable minds could differ" as to the resolution of these material factual issues on this evidence and that they should be resolved by trial. *Prindel*

11

¶ 46. Resolution of the factual issues will also affect the determination of the legal issue of duty. Therefore, we decline to address the duty issue further.

¶23 The District Court erred by granting summary judgment in favor of the Defendants. We reverse and remand this matter to the District Court for further proceedings consistent with this Opinion.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS