DA 12-0535

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 217

LEONARD LANDA and LANDA-
HARBAUGH & ASSOCIATES, LLC, a
Montana Limited Liability Corporation,

       Plaintiffs and Appellants,

   v.

ASSURANCE COMPANY OF AMERICA,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 09-508
Honorable Karen Townsend, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Elizabeth A. O'Halloran; Milodragovich, Dale & Steinbrenner, P.C.;
Missoula, Montana

      For Appellee:

          Steve Reida;, Patrick C. Riley; Landoe, Brown, Planalp & Reida, P.C.,
Bozeman, Montana

Submitted on Briefs:  April 17, 2013

Decided:  August 6, 2013

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Plaintiffs and appellants Leonard Landa and Landa-Harbaugh & Associates, LLC (collectively "Landa") appeal the grant of defendant and appellee Assurance Company of America's (Assurance) motion for summary judgment by the Fourth Judicial District Court of Montana, Missoula County.  We affirm.

## ISSUES

¶2     We restate the issues on appeal as follows:

¶3     *1. Did the District Court err by determining that Assurance had no duty to defend Landa because Alsup's claim did not involve an "occurrence" as defined by the insurance policy?*

¶4     *2. Did the District Court err by determining that Assurance had no duty to defend Landa because Alsup's claim did not involve a "bodily injury" as defined by the insurance policy?*

¶5     *3. Did the District Court err by determining that Assurance did not have a duty to conduct an independent investigation of Landa's claim?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶6     Leonard Landa was the sole managing member of Landa-Harbaugh & Associates, LLC, a Montana limited liability corporation licensed to sell securities and insurance in this state.  Landa carried commercial general liability insurance through Assurance, a New York entity licensed to do business in Montana.  This appeal arises out of Assurance's refusal to defend Landa against claims made by Olan L. "Bubba" Alsup (Alsup), a former employee of Landa's.

¶7 Alsup had previously worked as a salesman at Bretz RV & Marine in Missoula, Montana. Landa approached Alsup and encouraged him to quit his job at Bretz and come to work at Landa selling insurance. Alsup claimed that Landa promised to train him to run the insurance business with an eye towards soon retiring and selling Alsup the business for a "reasonable price." Alsup claimed that he quit his job at Bretz based on these representations and he began to work for Landa in January of 2002. However, Alsup claimed that Landa spent much of his time out of the office on vacation instead of training him or transferring him clients. Alsup eventually came to believe that Landa had no intention of either retiring or selling him the insurance business. When Alsup did approach Landa about buying the business, Landa repeatedly quoted prices that Alsup considered to be unreasonable and unrealistic given his valuation of the business. Alsup quit working at Landa in 2006 due to his belief that Landa's promises had been a ruse.

¶8 Alsup thereafter filed a complaint and demand for a jury trial on April 1, 2008, alleging that Landa had engaged in "fraud and constructive fraud," "misrepresentation and deceit," "deception in the character of employment," "negligence," "breach of contract," and "tortious breach of the implied covenant of good faith and fair dealing" by inducing Alsup to come work for him under allegedly false pretenses. Landa tendered defense of Alsup's claim to Assurance, through Zurich North America, on April 18, 2008. Landa included a copy of Alsup's complaint with this request.

¶9 Assurance declined to defend Landa, asserting that the allegations set forth in Alsup's complaint were not covered under Landa's policy. The policy sets out the following relevant coverages under "Section I – Coverages":

> COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damages' to which this insurance does not apply. . . .

The bodily injury and property damage liability section also provides:

> b. This insurance applies to 'bodily injury' and 'property damage' only if:
>
> > (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' . . . .

The section entitled "Coverage B – Personal and Advertising Injury Liability" provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising' to which this insurance does not apply. . . .

Section V of the policy provides the following relevant definitions:

> 3. 'Bodily injury' means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness, or disease.

4

13. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. 'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

   a. False arrest, detention, or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from . . .;

   d. Oral or written publication of material that slanders or libels . . .;

   e. Oral or written publication of material that violates a person's right of privacy;

   f. Misappropriation of advertising ideas . . .;

   g. Infringing upon another's copyright . . ..

17. 'Property damage' means:

   a. Physical injury to tangible property . . .; or
   b. Loss of use of tangible property . . ..

¶10 Assurance specifically claimed that Alsup's complaint did not contain any allegations of "bodily injury" or "property damage" as defined by the policy and that Landa's actions did not constitute a covered accidental "occurrence." Assurance also asserted that none of Alsup's allegations fell within the policy's definition of "Personal and Advertising Injury." Assurance's denial concluded with a request for "any case law, authority or any other information at all that would cause Assurance to reconsider its position[.]"

¶11 Landa again tendered defense of Alsup's claim to Assurance on January 16, 2009. This time Landa included a statement of claim asserting that Alsup sought damages for

emotional distress. This emotional distress claim, however, was not included in Alsup's complaint. Landa also attached a copy of our decision in *Allstate Ins. Co. v. Wagner-Ellsworth*, 2008 MT 240, 344 Mont. 455, 188 P.3d 1042. Assurance again declined to defend Landa. Assurance essentially repeated its claims that Alsup's allegations did not amount to "bodily injury" caused by an "occurrence" under the policy. Landa and Alsup settled the underlying case in 2010.

¶12    Landa subsequently filed a complaint seeking declaratory relief establishing that Assurance had a duty to defend and indemnify Landa, alleging several violations of Montana's Unfair Trade Practices Act (UTPA), common law bad faith, negligence, breach of the covenant of good faith and fair dealing, and breach of contract, and requesting attorney fees and punitive damages. Assurance filed a motion for summary judgment on all of Landa's claims, again arguing that Alsup's claims did not involve either a "bodily injury" or an "occurrence" while also asserting that several of the policy's coverage exceptions applied. The District Court granted Assurance's motion in an August 3, 2012 order, finding that Alsup did not experience a "bodily injury" as the result of an "occurrence" as those terms were defined by the "clear and unambiguous" language of the policy. The Court also determined that Assurance was not liable under the UTPA because the denial of coverage was "grounded on a legal conclusion." Landa appeals the Court's order.

**STANDARD OF REVIEW**

¶13    We review *de novo* a district court's summary judgment ruling. *Johnston v. Centennial Log Homes & Furnishings, Inc.*, 2013 MT 179, ¶ 24, 2013 Mont. LEXIS 224.

6

We apply the same M. R. Civ. P. 56 criteria as the district court, and summary judgment may be granted only "when the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show no genuine issues of material fact exist and when the moving party is entitled to judgment as a matter of law." *Fasch v. M.K. Weeden Constr., Inc.*, 2011 MT 258, ¶ 14, 362 Mont. 256, 262 P.3d 1117. The interpretation of an insurance policy presents a question of law, and we will review the District Court's legal conclusion for correctness. *Cusenbary v. United States Fid. & Guar. Co.*, 2001 MT 261, ¶ 9, 307 Mont. 238, 37 P.3d 67. Findings of fact are reviewed to determine if they are clearly erroneous. *Plum Creek Mktg. v. Am. Econ. Ins. Co.*, 2009 MT 264, ¶21, 352 Mont. 56, 214 P.3d 1238.

## DISCUSSION

¶14     *1. Did the District Court err by determining that Assurance had no duty to defend Landa because Alsup's claim did not invovle an "occurrence" as defined by the insurance policy?*

¶15     Assurance declined to defend Landa in part because it concluded that the allegations contained in Alsup's complaint did not constitute an "occurrence" as defined by the policy. As noted above, the policy provides that coverage extends only to "bodily injury" or "property damage" caused by an "occurrence." Thus, if Alsup's claims did not involve an "occurrence," Assurance had no duty to defend Landa for claims alleging either "bodily injury" or "property damage" under Coverage A of the policy.

¶16     Landa generally argues that Alsup's complaint included allegations of negligent, accidental, or unintentional conduct sufficient to fall within the above definition of "occurrence." Landa supports this argument with citations to cases from other jurisdictions

7

that purportedly show that a "misrepresentation" can be an "occurrence" and by arguing that

Alsup's claims in Counts I, II, and III included allegations that Landa's statements were

accidental. Landa further claims that we must look to the intended outcome from the

perspective of the insured, "not the conduct itself," to determine what counts as an

"occurrence" under the policy. From this perspective, Landa argues that it is "apparent that

the unexpected [by Landa] impact of the conduct alleged by Alsup dictates that there has

been an 'occurrence' in this instance."

¶17    In response, Assurance first broadly claims that Alsup's complaint "alleged only that

Landa engaged in intentional fraudulent conduct – rather than any accidental conduct –

purposefully designed to cause the harms Alsup allegedly suffered." Assurance also more

specifically argues that the manner in which Alsup pled "misrepresentation" under Count II

"made clear that he was indeed alleging intentional conduct."

¶18    The District Court determined that "the allegations in Alsup's complaints clearly

alleged that Landa's misrepresentations were intentional." We agree. Thus, we need not

address Landa's extra-jurisdictional citations[1] because a review of Alsup's complaint belies

Landa's claim that Counts I-III include allegations of accidental conduct. *Lloyd A. Twite*

*Family P'ship v. Unitrin Mutli Line Ins.*, 2008 MT 310, ¶ 7, 346 Mont. 42, 192 P.3d 1156;

*Town of Geraldine v. Mont. Mun. Ins. Auth.*, 2008 MT 411, ¶ 11, 347 Mont. 267, 198 P.3d

---

[1] However, even if we did, Landa's foreign cases explicitly focus on determining whether *negligent* misrepresentation can be an occurrence, which is not the question we are addressing.

796 ("An insurer's duty to defend its insured arises *when a complaint alleges facts which represent a risk covered by the terms of an insurance policy.*").

¶19    It is well-settled that an insurer's duty to defend the insured arises when an insured sets forth facts which represent a risk covered by the terms of the insurance policy. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 27, 321 Mont. 99, 90 P.3d 381. We have held that "[t]he insurance company must look to the allegations of a complaint to determine if coverage exists under an insurance policy, thus giving rise to the insurer's duty to defend." *Staples*, ¶ 20. Thus, to determine whether Assurance had a duty to defend Landa, we will look first to the terms of the policy, and next to the facts alleged by Alsup's complaint. *Lloyd A. Twite Family P'ship*, ¶ 7. When doing so, we will give the terms in the policy their usual meaning and construe them using common sense. *Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, ¶ 14, 315 Mont. 107, 67 P.3d 892.

¶20    Landa's policy defines "occurrence" as an "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not provide a separate definition for what constitutes an "accident." We have previously held that, where a policy defines an "occurrence" as an "accident," "[g]enerally, the term 'accident' from the standpoint of the insured reasonably refers to any unexpected happening that occurs without intention or design on the part of the insured." *Safeco Ins. Co. of Am. v. Liss*, 2000 MT 380, ¶ 36, 303 Mont. 519, 16 P.3d 399. A review of Alsup's complaint does not reveal allegations of the sort of accidental, unintentional conduct that the policy's definition of "occurrence" requires.

9

¶21 Specifically, Count I of Alsup's complaint alleged fraud and constructive fraud based on Landa's representations that Alsup "would be entering a profitable business and would be sold a business." In particular, Alsup claims that Landa's representations "were made with the intent that Plaintiff would quit his prior employment and begin working for Defendants . . . ." Indeed, Count I focuses on Landa's purportedly "false representations and improper motives" and does not itself allege accidental conduct.

¶22 Count II presents a claim for "misrepresentation and deceit." The claim is based on Landa's alleged representations that he would be able to provide Alsup with increased income, business opportunities, and the opportunity to purchase the insurance business. Importantly, negligent misrepresentation is neither mentioned nor alleged. Instead, as Assurance points out, Alsup plead "misrepresentation" in the conjunctive, claiming:

> 27. When the representations by Defendants were made, Defendants: (a) knew that the representations were untrue; (b) had no reason to believe that the representations made to Plaintiff were true; *and* (c) made the representations to mislead Plaintiff into quitting his prior employment, work for defendants for little or no compensation and no opportunity to purchase the business.

(emphasis added). Thus, Count II claims that Landa knowingly made false representations to Alsup concerning the nature of the work, persuaded Alsup to quit his job to pursue an illusory opportunity, and caused Alsup to suffer related damages.

¶23 Count III presents a claim for "deception in the character of employment." This claim is predicated on an alleged violation of § 39-2-303, MCA. Section 39-2-303, MCA prohibits a person or entity doing business in Montana from inducing, influencing, persuading, or engaging workers to change jobs "by means of deception, misrepresentation, or false

10

advertising . . .." Count III alleged that Landa violated § 39-2-303, MCA, "by fraudulently inducing and/or misrepresenting to Plaintiff that his coming to work for Defendants would lead to greater income, advanced business opportunities, and the opportunity to purchase the business at a fair price."

¶24    None of the aforementioned claims allege that Landa engaged in accidental conduct. Besides, "[t]he acts giving rise to the claim form the basis for coverage, *not any legal theories contained in the underlying complaint*." *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 2005 MT 50, ¶ 40, 326 Mont. 174, 108 P.3d 469 (emphasis added); *see also Town of Geraldine*, ¶ 24; *New Hampshire Ins. Group v. Strecker*, 244 Mont. 478, 482, 798 P.2d 130 (1990). The underlying conduct alleged in Alsup's complaint is wholly comprised of Landa's intentional acts. Alsup claimed Landa approached him with false promises to lure him away from his job with Bretz RV. Alsup further claimed that Landa misled him regarding his intent to sell the business, provide training, or transfer clients. None of these claims involve accidental conduct. Rather, Alsup explicitly claimed that Landa "lulled" him into believing that he would be able to buy the business and that "Landa would overvalue the business so that Plaintiff would become discouraged" in his attempts to purchase it. The acts giving rise to these claims are not in dispute, and Alsup's complaint portrays a program of intentional misrepresentation. As noted, Landa's insurance policy with Assurance does not provide coverage for "bodily injury" or "property damage" caused by intentional acts. "If there is no coverage under the terms of the policy based on the facts contained in the complaint, there is no duty to defend." *Steadele v. Colony Ins. Co.*, 2011

11

MT 208, ¶ 25, 361 Mont. 459, 260 P.3d 145 (citing *Grimsrud v. Hagel*, 2005 MT 194, ¶ 34, 328 Mont. 142, 119 P.3d 47). Thus, the District Court correctly determined that Alsup's allegations did not fit within the policy's definition of "occurrence" and, as a result, did not give rise to a duty to defend Landa.

¶25 This conclusion is supported by our analysis in *Blair v. Mid-Continent Cas. Co.*, 2007 MT 208, 339 Mont. 8, 167 P.3d 888. There, as here, the policy defined "occurrence" as " '[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions.' " *Blair*, ¶ 9. Blair admitted that he intentionally removed gravel from his property, but he claimed that Montana law established that an intentional act is an occurrence under an insurance policy if the resulting injuries or damages were not the intended or expected result. *Blair*, ¶ 17. We rejected that argument, holding that "[u]nder this definition, the proper focus in on whether Blair's deliberate operation of removing gravel is covered – not whether he intended the resulting damages allegedly stemming from the operation." *Blair*, ¶ 18. Thus, we do not look to whether Landa intended the specific harm or damages that Alsup alleged. Instead, we must focus on the acts described in Alsup's complaint, which, as discussed, concerned Landa's deliberate, allegedly false representations. "An intentional act cannot be an 'occurrence' because it is not an accident and because it is intended or expected by the insured." *Farmers Mut. Ins. v. Kienenberger*, 257 Mont. 107, 109, 847 P.2d 1360 (1993). Because Alsup's complaint alleged injuries caused by intentional acts, Assurance had no duty to defend Landa. We accordingly affirm

12

the District Court's conclusion that Alsup's claim did not constitute an occurrence as defined by the policy.

¶26     *2. Did the District Court err by determining that Assurance had no duty to defend Landa because Alsup's claim did not involve a "bodily injury" as defined by the insurance policy?*

¶27     Assurance also declined to defend Landa by asserting that Alsup's claim did not allege a "bodily injury." The District Court agreed, finding first that "Alsup did not allege damages of 'bodily injury' or emotional distress in either [amended] complaint, although Alsup did claim emotional distress in his statement of claim." The Court also concluded that "[u]nder the policy at issue here, emotional distress can amount to 'bodily injury' only if the 'mental anguish, mental injury' results from 'bodily injury.' " The District Court next found "no allegations and no supporting facts in Alsup's complaints or statement of claim that his claimed emotional distress was a result of 'bodily injury' or that there were physical manifestations of his emotional distress" and determined that Alsup did not suffer "bodily injury" under the policy.

¶28     Landa claims that the policy's definition of "bodily injury" is ambiguous and should be construed against Assurance. Specifically, Landa argues that the limiting language "resulting from bodily injury, sickness or disease" can be read two ways, either qualifying only "death" or qualifying "mental anguish, mental injury, shock, fright or death." Landa argues that if this ambiguity is construed in favor of the insured, physical manifestations of emotional distress are not required to constitute "bodily injury."

13

¶29 However, Coverage A clearly states that Landa's insurance only applies if claims for "bodily injury" or "property damage" result from an "occurrence." As we discussed above, we have concluded that Alsup's complaint did not allege an "occurrence." Under the clear language of Coverage A, this finding alone establishes that Assurance did not have a duty to defend Landa. We therefore need not determine whether Alsup suffered "bodily injury."

¶30 *3. Did the District Court err by determining that Assurance did not have a duty to conduct an independent investigation of Landa's claim?*

¶31 Landa claims that Assurance had "an affirmative obligation to make an investigation of the claim" pursuant to the Unfair Trade Practices Act. Landa specifically cites § 33-18-201(3) & (4), MCA, which provides that:

> A person may not, with such frequency as to indicate a general business practice, do any of the following: . . .
>
> > (3) fail to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
> >
> > (4) refuse to pay claims without conducting a reasonable investigation based upon all available information; . . . .

Assurance responds that the both UTPA and our case law show that where an insurer has a reasonable basis in law for denying a claim, an insurer is not liable under the UTPA. We agree.

¶32 First, the UTPA does not apply to Assurance in this instance because Assurance possessed a reasonable basis in law for denying coverage. Section 33-18-242, MCA, sets out the requirements of an independent cause of action under the UTPA. Section 33-18-242(5), MCA, states that "[a]n insurer may not be held liable under this section if the insurer had a

14

reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue." The District Court concluded that Assurance had a reasonable basis in law to deny coverage based on its conclusion that Alsup did not allege either an "occurrence" or "bodily injury." Having also concluded that Alsup's claims did not allege an "occurrence," we similarly find that Assurance is not liable under the UTPA pursuant to § 33-18-242(5), MCA.

¶33 Our case law also contradicts Landa's claim that Assurance had an affirmative obligation to make an investigation of the claim. In *Revelation Industry*, we discussed when insurers may or may not look beyond the contents of the complaint when deciding their duty to defend. *Revelation Indus.*, ¶ 22. We outlined three general scenarios addressed by our jurisprudence: in Scenario (1), where the complaint clearly alleges facts that come within the coverage of the policy, we have held that the insurer is required to defend the insured without looking beyond the complaint; in Scenario (2), where the complaint alleges facts that do not come within the coverage of the policy and the insurer has no knowledge of any other facts, we have held that the insurer has no duty to defend the insured; and in Scenario (3), where the complaint alleges facts that come within the coverage of the policy, but the insurer knows of other facts that negate coverage, we have held that the insurer has no duty to defend. *Revelation Indus.*, ¶ 22. The present case most clearly aligns with Scenario 2. Landa tendered defense of Alsup's complaint twice. Both times, Landa attached the complaint. The second time, Landa also attached a statement of claim alleging Alsup suffered emotional distress and our opinion in *Wagner-Ellsworth*. There is no indication that

15

Assurance had any other outside sources of information concerning Alsup's complaint. As discussed, neither Alsup's complaint, nor the statement of claim, contained an allegation of an "occurrence" sufficient to trigger a duty to defend. In this situation, "if the allegations in the complaint clearly present an event or occurrence that is *not* covered under the policy, the insurer may refuse to defend." *Revelation Indus.*, ¶ 27 (emphasis in original).

¶34    Indeed, our opinion in *Revelation Industry* expressly declined to require that insurers seek out facts beyond the complaint. We instead concluded that an insurer could not "simply ignore factual information supplied to them by their insured but not alleged in the complaint or petition, where those facts would trigger a duty to defend." *Revelation Indus.*, ¶ 30. We expressly noted that "[t]his does not require an insurer to seek out such information—as we have previously held, insurers that look at facts beyond the allegations in the complaint do so at their own risk as they will be require to defend and/or indemnify based on the information discovered." *Revelation Indus.*, ¶ 30; *see also Lloyd A. Twite Family P'ship*, ¶¶ 7-8, 16; *Staples*, ¶ 24. The facts alleged in Alsup's complaint were outside the policy's coverage, as Assurance correctly concluded. Landa's second tender of defense, with a statement of claim and our *Wagner-Ellsworth* case attached, did not provide facts sufficient to bring the claim within the policy's coverage, and Landa does not argue that Assurance possessed other information that would have triggered a duty to defend. Assurance therefore properly denied coverage based on the complaint and the information it possessed. *Revelation Indus.*, ¶ 30. We accordingly conclude that the District Court correctly determined that Assurance is not liable under the UTPA, that Assurance had a reasonable basis in law for denying coverage,

16

and that Assurance was not obligated to make any further investigation before declining to defend Alsup's claim.

## CONCLUSION

¶35    Alsup's complaint did not allege an "occurrence" and, as a result, did not trigger a duty to defend under the policy.  Because of this, Assurance correctly declined to provide a defense and the District Court correctly granted summary judgment on Landa's claims. Further, our decision to affirm the District Court's order with regards to Issue One renders a decision regarding Issue Two superfluous.

¶36    Affirmed.

/S/ MICHAEL E WHEAT

We concur:

/S/ BETH BAKER
/S/ JIM RICE
/S/ LAURIE McKINNON
/S/ BRIAN MORRIS