DA 13-0415

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 39

SCENTRY BIOLOGICALS, INC.,

      Plaintiff and Appellee,

   v.

MID-CONTINENT CASUALTY COMPANY,

      Defendant and Appellant,

WILBUR-ELLIS COMPANY and
APPLEWOOD ORCHARDS, INC.,

      Plaintiffs in Intervention and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Thirteenth Judicial District, In and For the County of Yellowstone, Cause No. DV 11-0115 Honorable G. Todd Baugh, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Allan H. Baris, Moore, O'Connell & Refling, P.C., Bozeman, Montana

            Levon G. Hovnatanian, Christopher W. Martin, Ethan D. Carlyle, Martin, Disiere, Jefferson & Wisdom, L.L.P., Houston, Texas

      For Appellees:

            Donald L. Harris, Tucker P. Gannett, Harris & Warren, PLLP, Billings, Montana (for Scentry Biologicals, Inc.)

            Gregory 'Greg' G. Murphy, Attorney at Law, Billings, Montana (for Wilbur-Ellis Company)

            Paul D. Odegaard, Odegaard Law Firm, Billings, Montana (for Applewood Orchards, Inc.)

Submitted on Briefs: January 22, 2014
Decided: February 18, 2014

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1      Appellant Mid-Continent Casualty Company provided comprehensive general liability insurance to Scentry Biologicals, a Delaware corporation licensed to do business in Montana.  Scentry is the manufacturer of NoMate, a pest control product designed to protect various agricultural crops from destructive insects by thwarting the insects' mating activities.  Applewood Orchards, a Michigan corporation, purchased NoMate in 2006 from Wilbur-Ellis (W-E), a distributor of NoMate.  Applewood used the product on its apple crop in spring and summer 2006 for protection against codling moths.  It subsequently discovered significant moth damage and pursued a tort action against Scentry and W-E in a Michigan court.  Scentry notified Mid-Continent and both Scentry and W-E requested that the insurer defend them under Scentry's policy.  Mid-Continent initially refused but subsequently agreed to defend Scentry, reserving its right to determine its coverage obligations later.  It persisted in its refusal to defend W-E and W-E subsequently settled with Applewood for $62,500.

¶2      In the tort action, the Michigan court ruled against Scentry and in favor of Applewood, and entered a $544,325 award.  A few months prior to the Michigan court's resolution, Scentry filed a declaratory judgment action against Mid-Continent in Montana's Thirteenth Judicial District Court seeking declaratory relief on coverage issues.  W-E and Applewood intervened.  Following the Michigan court's ruling, all parties in the Montana proceeding moved for summary judgment.  The District Court granted Scentry, Applewood, and W-E's motions and denied Mid-Continent's motion.  Based upon stipulated damages, the court awarded Applewood $595,000, Scentry

3

$210,000, and W-E $460,000.  Mid-Continent appeals the orders of summary judgment. We affirm.

## ISSUES

¶3     Mid-Continent presents the following issues on appeal:

¶4     Did the District Court err in granting Scentry's motion for summary judgment?

¶5     Did the District Court err in granting W-E's motion for summary judgment?

¶6     Did the District Court err in granting Applewood's motion for summary judgment?

¶7     Did the District Court err in denying Mid-Continent's motion for summary judgment?

## FACTUAL AND PROCEDURAL BACKGROUND

¶8     Scentry is a pest control product manufacturer with its principal place of business in Billings, Montana.  In 2006, Applewood Orchards purchased Scentry's product from W-E and applied it to portions of its Michigan apple orchard.  It is undisputed that Applewood applied the product correctly and in accordance with the application instructions, and that it subsequently monitored the crop appropriately.  However, Applewood suffered significant codling moth damage to those portions of its apple crop treated with Scentry's product.

¶9     During this time, from May 1, 2006, through May 1, 2007, Scentry carried $2 million in commercial general liability (CGL) insurance with Mid-Continent Casualty Company.  Scentry claims it also carried $2 million in products-completed operations

4

hazard coverage (PCOH) with Mid-Continent. Mid-Continent asserts it did not insure Scentry for PCOH.[1]

*Michigan litigation*

¶10    In 2008, Applewood brought an action in the Circuit Court for Lenawee County, Michigan, against Scentry's distributor, W-E. In 2009, Applewood filed an amended complaint adding Scentry as a defendant and claiming breach of warranty of merchantability, breach of warranty of fitness, breach of contract, negligence, misrepresentation, fraud in the inducement, and violation of the Michigan Consumer Protection Act.

¶11    Upon notice of Applewood's complaint, Scentry notified Mid-Continent and tendered the matter to the insurer for a defense. Mid-Continent refused, asserting that Applewood's claims did not fall within the CGL coverage of Scentry's policy. Scentry countered that its claims were covered under the PCOH coverage of the policy but Mid-Continent did not address this claim. After Scentry made additional demands for a defense under the policy, Mid-Continent subsequently assumed Scentry's defense under a reservation of rights with respect to coverage.

---

[1] "The distinct risk of loss occasioned by a defect in the insured's product, which manifests itself only after the insured has relinquished control of the product and at a location away from the insured's normal business premises, is covered by the purchase of separate 'products hazard' coverage. This class of coverage generally protects a manufacturer or seller against claims of injury due to a product defect, breach of warranty and misrepresentation." *Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.*, 690 N.E.2d 866, 869 (N.Y. 1997) (internal citations omitted).

¶12 W-E, asserting it was an additional insured on Scentry's policy, also sought a defense from Mid-Continent. Mid-Continent repeatedly refused and W-E assumed its own defense. Ultimately, it settled with Applewood for $62,500.

¶13 In April 2011, the Michigan court conducted a 4-day bench trial. At the conclusion, the court held that Scentry was liable to Applewood for breach of the implied warranty of fitness, breach of the implied warranty of merchantability, and fraud in the inducement. The court issued judgment in May 2011 and awarded Applewood damages of $508,564.69 plus costs and pre-judgment interest for a total award of $544,325.03.

*Montana litigation*

¶14 In January 2011, as the Michigan case was proceeding toward trial, Scentry brought a declaratory action against Mid-Continent in the Thirteenth Judicial District Court of Montana, seeking a judgment declaring that Scentry was covered under its policy with Mid-Continent for Applewood's claims and that Mid-Continent was obligated to defend and indemnify Scentry.

¶15 In May 2011, W-E was granted leave to intervene in the Montana cause of action. It argued that as an additional insured under the Mid-Continent policy, it was entitled to indemnification for its settlement and expenses. In September 2011, Scentry moved for summary judgment. In December 2011, Applewood moved to intervene in order to assert a right to recover the Michigan judgment against Mid-Continent. Applewood's motion to intervene was granted by the District Court. Shortly thereafter Mid-Continent moved for summary judgment. In March 2012, Applewood moved for summary judgment and in November 2012, W-E filed a second motion for summary judgment.

6

¶16    On December 12, 2012, the District Court issued its Decision on Summary Judgment Motions, addressing each party's motion individually.

*Scentry*

¶17    The court concluded that in addition to providing the undisputed CGL coverage, Scentry's policy with Mid-Continent also provided coverage for PCOH. The District Court held that Applewood's claims for breach of the implied warranties of merchantability and fitness fell within the PCOH coverage and entitled Scentry to summary judgment on its claim against Mid-Continent for coverage and indemnification.

¶18    Mid-Continent argued that any award to Scentry must be proportionately reduced in light of the Michigan court's finding of fraud, as fraud is considered an uninsured intentional act. The court declined to apportion the award, explaining that either Mid-Continent did not seek apportionment in the Michigan case or sought apportionment there but was unsuccessful. Moreover, Mid-Continent did not "produce[] a colorable argument for apportionment" before the District Court. The court held that "liability and damages which Applewood sustained are covered by the [PCOH] portion of the policy, and therefore Mid-Continent must indemnify Scentry for the Applewood judgment." The court therefore granted Scentry's motion for summary judgment.

*Applewood*

¶19    As to Applewood, the District Court merely noted that Applewood moved for summary judgment based upon Scentry's arguments; therefore, having granted Scentry's motion, the court granted Applewood's as well.

*Wilbur-Ellis*

¶20   W-E moved for partial summary judgment seeking a declaration that it was an additional insured under Scentry's policy and, as such, Mid-Continent should have defended it upon W-E's requests.  The District Court rejected Mid-Continent's argument that it did not insure W-E, finding that "Mid-Continent accepted an additional premium for Wilbur-Ellis, as well as issued a certificate of insurance."  The court concluded that having

> previously held that Mid-Continent must indemnify Scentry . . . Mid-Continent must also indemnify Wilbur-Ellis for the defense costs which [W-E] bore as well as the settlement amount.  Mid-Continent had a duty to either defend the case, or prove with the evidence available that defense was not available because of exclusions, or defend under a reservation of rights . . . .

Based upon these findings and conclusions, the District Court granted W-E's motion for summary judgment.

*Mid-Continent*

¶21   Mid-Continent also sought summary judgment, asserting that it had neither a "duty to defend nor duty to indemnify" W-E in the underlying Michigan action.  Noting that it had granted W-E's summary judgment motion on the same grounds, the District Court denied Mid-Continent's motion.

¶22   Mid-Continent appeals.

## STANDARD OF REVIEW

¶23   We review a district court's ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as did the district court. Summary

judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3); *Newman v. Scottsdale Ins. Co.*, 2013 MT 125, ¶ 20, 370 Mont. 133, 301 P.3d 348 (citations omitted).

¶24 We review for correctness a district court's interpretation of law pertaining to a declaratory judgment ruling. *Newman*, ¶ 21 (citation omitted).

¶25 The interpretation of an insurance contract is a question of law. We review a district court's conclusions of law de novo to determine whether they are correct. *Newman*, ¶ 22 (citation omitted).

¶26 Lastly, we will uphold a correct result regardless of the reasons given by the district court. *Stansbury v. Lin*, 257 Mont. 245, 248, 848 P.2d 509, 511 (1993) (citation omitted).

## DISCUSSION

¶27 *Did the District Court err in granting Scentry's motion for summary judgment?*

¶28 Mid-Continent argues on appeal that because Scentry did not meet its summary judgment burden establishing the existence of PCOH coverage in the District Court, the court erred by concluding that Scentry's policy provided such coverage. Mid-Continent relies upon the first page of its 2-page policy declaration which indicates that Scentry paid no separate premium for PCOH coverage. (*See* ¶ 30 below.) Mid-Continent therefore maintains that Scentry had no coverage for completed products hazards.

9

¶29    Scentry counters that the second page of the policy declarations pages expressly indicates a $2 million limit of insurance for "products-completed operations aggregate," a/k/a PCOH.  It also asserts that Mid-Continent conceded on multiple occasions throughout this proceeding that Scentry had PCOH coverage.  The District Court found that Scentry's policy from Mid-Continent provided $2 million in both CGL and PCOH.

¶30    Scentry's insurance policy contains several references to PCOH coverage. Initially, page one of the declarations pages of the policy provides:

> This policy consists of the following coverage parts for which a premium is indicated.

| | |
|---|---|
| Commercial General Liability Coverage Part | $12,284 |
| Owners and Contractors Protective Liability Coverage Part | $_____ |
| Products/Completed Operations Liability Coverage Part | $_____ |
| Railroad Protective Liability Coverage Part | $_____ |
| TOTAL | $12,284 |

Page two of the declarations pages provides:

> LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $2,000,000 |
| Products-Completed Operations Aggregate Limit | $2,000,000 |
| Personal and Advertising Injury Limit | $1,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Damage to Premises Rented To You   (Any One Premises) | $  100,000 |
| Medical Expense Limit            (Any One Person) | EXCLUDED |

¶31    Section III of the policy also addresses limits of insurance.  Subsections 2 and 3 of Section III state:

> 2. The General Aggregate Limit is the most we will pay for the sum of:
>     a. Medical Expenses under Coverage C;
>     b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
>     c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit [PCOH] is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

¶32    Section V of the policy provides relevant definitions and includes a definition for "products-completed operations hazard." As defined in the policy, PCOH provides protection to the insured for "all . . . 'property damage' occurring away from premises [the insured] own[s] or rent[s] and arising out of [the insured's] product. . . ."

¶33    In addition to being bound by the foregoing terms and conditions of the policy, Mid-Continent stated in its Answer to Scentry's Complaint for Declaratory Judgment "that a portion of the Mid-Continent policy could provide coverage for products-completed operations coverage." Also, in a 2011 letter, Mid-Continent's attorney stated "if the jury [in the Michigan case] found that Scentry Biologicals' product did not perform as warranted and caused damage to Applewood Orchards' crop, the PCOH coverage would apply." Lastly, in Mid-Continent's answer to the amended complaint, the insurer stated that the policy "is a commercial general liability . . . policy that included products-completed operations coverage."

¶34    We agree with the District Court's conclusion that the Mid-Continent policy provided PCOH coverage to Scentry. Although page one of the Mid-Continent policy does not reflect the payment of a premium for PCOH coverage, page two of the declarations specifically provides limits of insurance in the sum of $2 million for "Products-Completed Operations Aggregate Limit." It is well-established that ambiguities in an insurance policy are construed against the insurer. *Newman*, ¶ 41.

11

Moreover, Mid-Continent's admissions in its correspondence and pleadings significantly buttress the court's conclusion that this coverage was provided to Scentry.

¶35   Having determined that Scentry's policy provided PCOH coverage, we next address whether Scentry's claims obligated Mid-Continent to indemnify it under the policy.

¶36   Mid-Continent argued to the District Court and on appeal that the insurance policy applies to property damage only if the property damage is caused by an "occurrence." An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Mid-Continent posits that Scentry's claim does not constitute an "occurrence" because the claim arises from a fraudulent, intentional act, and not an accident. Relying upon the Michigan court's determination that Scentry was liable for breach of the implied warranties of fitness and merchantability and fraud in the inducement, Mid-Continent maintains that because Scentry fraudulently induced Applewood to purchase its defective product, all of Applewood's damages stem from this non-accidental conduct and therefore are not protected by the policy.

¶37   Scentry counters with multiple alternative arguments, one of which is that the property damage suffered by Applewood was caused by an occurrence because it (Scentry) did not intend the damage to occur. It argues that the policy definition of "occurrence" turns on whether the underlying conduct is intentional or accidental. Quoting *Landa v. Assurance Co.*, 2013 MT 217, ¶ 20, 371 Mont. 202, 307 P.3d 284, Scentry submits that "[g]enerally, the term 'accident' from the standpoint of the insured reasonably refers to any unexpected happening that occurs without intention or design on

the part of the insured." Scentry recites portions of Applewood's first amended complaint filed in the Michigan court:

> Misrepresentation by Defendants [Scentry and W-E]:

> 39. Defendants represented to [Applewood] that the product sold to [Applewood] was a tested, proven or otherwise effective product that met applicable standards and would protect [Applewood's] orchards from moth damage.

> 40. Defendants' representations were untrue.

> 41. Defendants knew or should have known, or were negligent in not knowing, that the representations were not true.

¶38    Scentry asserts that it was upon these allegations that the Michigan court based its fraudulent inducement ruling and that because the court could have premised its determination on the allegation that Scentry "should have known, or were negligent in not knowing," the court's ruling did not necessarily mean that the ostensible fraud was intentional rather than negligent or accidental. Moreover, as Applewood points out in its brief

> Under Michigan law, the conduct which forms the basis of a fraudulent inducement claim may be intentional, reckless or negligent. In Michigan, negligent fraudulent inducement is referred to as "innocent misrepresentation." U.S. Fidelity & Guaranty Co. v. Black, 313 N.W.2d 77, 84 (Mich. 1981).

Given the anomalies of Michigan law, it was incumbent upon Mid-Continent to seek clarification of the Michigan court's ruling if it intended to rely upon it to avoid coverage. Mid-Continent did not do so.

¶39    It also bears repeating that fraud in the inducement was one of three grounds for the Michigan judgment, the others being breach of the implied warranties of fitness and

13

merchantability. As noted, fraud in the inducement may be premised upon an innocent misrepresentation, and as such would not be considered an intentional act. Furthermore, an "occurrence" under the policy includes "continuous or repeated exposure to substantially the same general harmful conditions," which is exactly what occasioned the damage to the Applewood crop. Thus, the threshold requirement of an "occurrence" as defined in the Mid-Century policy has clearly been satisfied. We therefore conclude the District Court did not err in granting Scentry's motion for summary judgment

¶40 *Did the District Court err in granting W-E's motion for summary judgment?*

¶41 Mid-Continent argues that under the express terms of the relevant endorsement to its policy, it owed no duty to defend or indemnify W-E because Scentry had not executed a "written 'insured contract' " to designate W-E as an additional insured. Additionally, it asserts that "payment of a premium and the issuance of a certificate of liability insurance was not a proper basis for [the District Court] to conclude that Mid-Continent owed [W-E] a duty to defend."

¶42 The endorsement page of Scentry's Mid-Continent policy naming W-E as an additional insured states that "[t]his amendment applies only when you have agreed by written 'insured contract' to designate the person or organization listed above as an additional insured subject to all provisions and limitations of this policy." W-E acknowledges that there is no single document reflecting the agreement between Scentry and W-E that Scentry would provide it with coverage under Scentry's Mid-Continent policy. It argues, however, that nothing in the policy requires such a single document. As proof of the existence of such agreement, W-E points to the affidavit of Deborah

14

Wagner who worked for a Montana insurance company and who was responsible for procuring insurance for Scentry during the time at issue. She stated that W-E was an additional insured on Scentry's policy beginning in 2001 and continuing through at least May 1, 2007. She explained that the procedure for adding an additional insured to Scentry's policy required that W-E submit a written request to Scentry, Scentry would then notify her of the request, and she, in turn, would send a written request to Mid-Continent. She stated that Scentry paid the premium for adding W-E to its policy and in accordance with procedure Wagner's company issued a certificate of liability insurance.

¶43 W-E also refers to the affidavit of Mike Whalen, Scentry's president. Whalen states in his affidavit that W-E sent a letter to Scentry stating that as a condition for selling Scentry's product, W-E required that Scentry add W-E to its liability policy as an additional insured. Whalen stated he recalled receiving the letter and notifying Deborah Wagner of the request and subsequently completing the necessary steps to add W-E. Lastly, W-E summarized an affidavit submitted by a now-retired W-E District Manager, Herald Peeples. Peeples' affidavit supported the recollections of both Wagner and Whalen. We therefore conclude there were sufficient writings to satisfy the "written 'insured contract' " provision of Scentry's policy.

¶44 Turning to Mid-Continent's refusal to defend and indemnify W-E, it is well-established that the duty to defend is broader than the duty to indemnify. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 21, 321 Mont. 99, 90 P.3d 381 (citations omitted). In *Staples*, we put insurers on notice that "[u]nless there exists an unequivocal

demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Staples*, ¶ 22. Moreover, we repeatedly explained that had Farmers Union believed there was "a legitimate basis for contesting coverage, it could have tendered the defense under a reservation of rights and filed a declaratory judgment action." *Staples*, ¶¶ 26, 28. It is apparent that Mid-Continent understands the concept of "defending with a reservation of rights" as that is what it did with respect to Scentry's claims for coverage.

¶45 The record unequivocally establishes that Mid-Continent charged Scentry a premium of $150 to add W-E as an additional insured to its policy. The District Court also found that Mid-Continent agreed to the issuance of a certificate of insurance naming W-E as an additional insured and identified W-E as an additional insured in the Scentry policy endorsements schedule. This evidence convinced the District Court that Mid-Continent should have, at the least, defended W-E in the Michigan action. Moreover, we conclude based upon the affidavit testimony described above that there existed a written agreement between W-E and Scentry that Scentry would provide liability insurance to W-E as an added insured. For these reasons, we agree with the District Court.

¶46 Because Mid-Continent persisted in its refusal to defend W-E, it did not raise any coverage defenses to W-E's claims for indemnification. As we have determined that Mid-Continent erred in refusing to defend W-E in the underlying case, Mid-Continent is estopped from now denying indemnification for W-E's damages, including the settlement amount and the amounts it expended for attorney fees. *Staples*, ¶ 28 (If insurer

16

unjustifiably refused to defend, it is estopped from denying coverage.); *Newman*, passim. Though unnecessary to our conclusion, we further note that the rationale that supports the existence of coverage for Scentry applies with equal force to W-E, as it was a co-insured under the Mid-Continent policy with Scentry, and thus received the same coverage as Scentry received. We therefore conclude that the District Court did not err in granting W-E's motion for summary judgment.

¶47    *Did the District Court err in granting Applewood's motion for summary judgment?*

¶48    Mid-Continent argues that Applewood failed to establish it was legally entitled to recover—directly from Mid-Continent—the settlement amount agreed upon by W-E in the Michigan litigation. As noted above, W-E settled Applewood's claim against it prior to the Michigan court trial for $62,500. Applewood counters that it is so entitled under the express terms of the Mid-Continent policy. Section IV, subsection (3)(b) of the policy provides:

> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.

¶49    The District Court granted Applewood's motion for summary judgment noting that Applewood moved for summary judgment "based on the briefing of Scentry" and it had granted Scentry's motion. Applewood likewise adopted by reference Scentry's arguments in its brief on appeal before this Court. We reject Mid-Continent's argument that Applewood was obligated to posit additional or different legal arguments; Applewood is, after all, simply seeking recovery of the agreed judgments entered against

Mid-Continent's insureds. In light of our foregoing determinations, and there being no objection by either Scentry or W-E, we conclude the District Court did not err in granting Applewood's motion for summary judgment.

¶50 *Did the District Court err in denying Mid-Continent's motion for summary judgment?*

¶51 Having affirmed the District Court's rulings granting Scentry, Applewood, and W-E's motions for summary judgment, we have effectively affirmed the court's decision denying Mid-Continent's motion for summary judgment.

**CONCLUSION**

¶52 For the foregoing reasons, we conclude the District Court did not err in granting the summary judgment motions filed by Scentry, W-E, and Applewood. The judgment of the District Court is affirmed.

/S/ PATRICIA COTTER


We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

18